952 A.2d 275

**NOVA RESEARCH, INC., et al.**

v.

**PENSKE TRUCK LEASING CO., L.P.**

**No. 68, Sept. Term, 2007.**

Court of Appeals of Maryland.

July 25, 2008.

438

Erik H. Nyce (DeCaro, Doran, Siciliano, Gallagher & De-Blasis, LLP, Lanham), on brief, for petitioners.

David A. Skomba (Tamara B. Goorevitz and Colin Bell of Franklin & Prokopik, P.C., Baltimore), on brief, for respondent.

Argued before BELL, C.J.,\*RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER (Retired, specially assigned), DALE R. CATHELL (Retired, specially assigned), JJ.

RAKER, J.

In this case requesting declaratory relief, we review the trial court's construction of a rental agreement between Penske Truck Leasing Co., L.P. (Penske) and Nova Research, Inc. (Nova). The question presented in this appeal is whether the contract provision for indemnification includes first party attorney's fees, where the contract language does not provide expressly for the recovery of attorney's fees. We are asked also to decide whether, subsequent to the declaratory judgment in favor of indemnification, Penske's applications filed for costs and expenses were submitted properly to the trial court pursuant to Maryland Code (1974, 2006 Repl. Vol.), § 3–412 of

---

\* Raker, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

the Courts & Judicial Proceedings Article.[1] We shall hold
that Penske's applications were submitted properly, but that
attorney's fees in the present action establishing the right to
indemnification are not recoverable.

## I.

In 2001, petitioner Nova contracted to rent a tractor and
trailer from respondent, Penske, under two identical rental
agreements. The agreements obligated Penske to provide
liability protection in the form of supplemental liability insur-
ance.[2] The provision provides as follows:

> "[Penske] shall, at its sole cost, provide liability protection
> for Customer and any operator authorized by Penske, and
> no others ... in accordance with the standard provisions of
> a Basic Automobile Liability Insurance Policy as required in
> the jurisdiction in which Vehicle is operated, against liability
> for bodily injury, including death, and property damage
> arising out of the ownership, maintenance, use and opera-
> tion of Vehicle as permitted by this agreement, with limits
> as follows:
>
> .... [P]rimary coverage of $100,000 each person, $300,000
> each accident for bodily injury, including death, and $25,000
> each accident for property damage."

The provision went on to state as follows:

> "Customer shall indemnify, and hold harmless, Penske, its
> partners, and their respective agents, servants and employ-
> ees, from and against all loss, liability and expense as a
> result of bodily injury, death or property damage caused by
> or arising out of the ownership, maintenance, use or opera-
> tion of Vehicle, but, if 'Penske Provides L.P.' is initialed or
> is otherwise applicable, and Customer is in compliance with

---

**1.** Unless otherwise noted, all subsequent statutory references herein
shall be to the Courts & Judicial Proceedings Article of Maryland Code
(1974, 2006 Repl. Vol.).

**2.** Nova also maintained its own primary insurance policy with Fire-
man's Insurance Company of Washington, D.C., an additional petition-
er in the case *sub judice*.

its obligations to Penske under this Agreement, Customer's indemnification and hold harmless obligation hereunder shall be in excess of the liability protection expressly required to be provided by Penske under this Agreement."

An additional clause, entitled "Customer's Responsibilities; Refueling Service Charges; Breakdown Expenses," states further, in pertinent part, as follows:

"Customer shall: (A) indemnify, and hold harmless Penske, its partners, and their respective agents, servants and employees, from and against all loss, liability and expense caused or arising out of Customer's failure to comply with the terms of this Agreement."

The effect of these provisions is to provide insurance up to the provided for limits, but not beyond that, where Nova was in compliance with its obligations under the contract, but for Nova to indemnify and hold harmless Penske if Nova failed to comply with the agreement terms.

On May 24, 2002, the rental vehicle was involved in a fatal accident in Texas, where both vehicles involved were destroyed and both drivers killed. The State of Texas charged Penske with the expenses incurred in investigating the accident, as well as environmental cleanup and remediation costs. In December 2002, Nova's primary insurer, Fireman's Insurance Company, filed a declaratory judgment action in Texas, naming Nova and Penske as defendants, seeking to determine that Penske was obligated to provide liability insurance under the rental agreements. Within a week, Penske filed a request for declaratory relief against Nova and Fireman's Insurance in the Circuit Court for Prince George's County, Maryland, asserting that Nova had breached the agreement by using a non-permissive driver and asserting that Nova was obligated to indemnify Penske for any expenses incurred as a result of the accident. In June 2003, the Texas lawsuit was dismissed on the grounds of forum non conveniens. Penske was not a named party in a subsequent wrongful death suit filed against Nova in Texas.

In the Maryland declaratory judgment action, both parties filed motions for summary judgment. After a hearing, the Circuit Court for Prince George's County found that Nova breached the terms of the rental agreements and issued an Order on October 16, 2003, declaring, in part, as follows:

"[I]t is further ordered, adjudged and declared that Plaintiff Penske Truck Leasing Co., L.P., is entitled to full indemnification from the Defendant . . . for any claims arising out of said loss . . . and that Penske, having established its right to coverage and indemnity, is entitled to its costs and expenses in the subject action."

Nova filed a motion to alter or amend the judgment and Penske filed a request for Application for Costs and Expenses, seeking a total of $91,979.18, to cover the investigation of the accident, environmental clean up and remediation, attorney's fees in defense of the Texas action, and attorney's fees in the Maryland declaratory judgment action Penske brought against Nova and Fireman's. Nova then filed a third party complaint against Penske's insurer, Old Republic Insurance Company, and Penske filed a motion to dismiss the third party complaint. On March 8, 2004, the Circuit Court denied Penske's application for costs, struck the third party complaint, and denied Nova's motion to alter or amend the finding of summary judgment for Penske. Nova noted a timely appeal to the Court of Special Appeals contesting the trial court's grant of summary judgment. Penske filed a cross-appeal regarding the denial of its application for costs.

The Court of Special Appeals, in an unreported opinion, affirmed the declaratory judgment, but vacated the denial of the Application for Costs and Fee and remanded for further proceedings. On remand, Penske filed a Supplemental Application for Costs and Expenses, seeking an additional $84,162.46, which included additional investigation costs of the accident, the destruction of the tractor and trailer, and additional attorney's fees for both the Texas and Maryland litigation.

The trial court issued a written decision denying the application for costs and expenses. The Circuit Court observed that "[t]here is no argument as to whether Penske is entitled to indemnification arising out of the breach. The only issue is whether indemnification encompasses attorney's fees accumulated in anticipation of the wrongful death litigation." Treating Penske's application as a request for attorney's fees in a first party action, the Circuit Court determined that the American Rule applied and the contract indemnification clause did not serve as a fee-shifting provision. The court supported its reasoning by examining *Shan Industries, LLC v. Tyco International (US), Inc.*, No. Civ. 04–1018, 2005 WL 3263866 (D.N.J. Nov. 30, 2005), an unreported federal district court order, where the district court found that an indemnification clause did not encompass attorney's fees in first party actions, and *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 77 (2d Cir.2004). The Circuit Court found also that the insured exception to the American Rule in *Bausch & Lomb v. Utica Mutual*, 355 Md. 566, 735 A.2d 1081 (1999), did not apply to insurers or in first party liability cases.

Penske noted a timely appeal. The Court of Special Appeals reversed the decision of the trial court. First, the intermediate appellate court noted a distinction in Penske's application between the request for attorney's fees and the request for other consequential expenses arising out of the accident, "including property losses and the expenses of environmental cleanup and accident investigation." The Court of Special Appeals held that Penske was entitled to both. The court reasoned that, as to attorney's fees, the contract exception to the American Rule applied. As to the issue of other accident-related costs, the Court of Special Appeals held that there was no bar to Penske's recovery of these expenses.

We granted certiorari to address the following questions submitted by Nova:

"Is it desirable, or in the public interest, for this Court to address whether first party attorney's fees should be awarded as a matter of public policy in a suit for contractual indemnity when there is no fee shifting provision in the

subject contract and without regard to the nature of whether the indemnity is first party damages or as a result of third party litigation.

"Is it desirable, or in the public interest, for this Court to define and determine the extent of continuing jurisdiction for 'Applications' under Maryland's Declaratory Judgment Act, C&J P Art., and section 3–412. Further relief, and

a. Assuming that such jurisdiction exists, what rules, standards and procedural protections should a circuit court use with respect to Applications for 'necessary and proper' further relief, and,

b. Whether the statute of limitations applies to Applications for further relief."

*Nova v. Penske,* 401 Md. 172, 931 A.2d 1095 (2007).

## II.

Petitioner argues that the Court of Special Appeals erred in reading a fee shifting provision into the indemnity clause in the contract. Petitioner points out that the case law relied upon for support of awarding attorney's fees is limited to circumstances involving indemnification *after* defending against a third party claim, and argues that the case *sub judice* is procedurally distinguishable. Further, petitioner argues that *Atlantic v. Ulico,* 380 Md. 285, 302, 844 A.2d 460, 469 (2004), which construed an indemnity contract as encompassing first party attorney's fees, is not controlling because in that case the indemnification provision in the agreement specifically defined the term "loss" to include any expenses as a result of the enforcement of the agreement. On the second question, Nova argues that Penske's application and supplemental application should not have been granted because no damages had been pled or proven prior to final judgment. Petitioner argues also that allowing the application would conflict with § 5–101 of the Courts & Judicial Proceedings Article, which limits the filing of a civil action to within three years of date it accrues, unless another provision of the Code provides a different time period.

Respondent argues that we should imply that respondent is entitled to recovery of attorney's fees unless the indemnity contract provides otherwise. Rather than interpret the terms of the contract to provide for fee-shifting to overcome the American rule, respondents maintain that this case falls within an exception identified in Maryland law regarding cases seeking indemnification. Penske cites the proposition in *Jones v. Calvin B. Taylor Banking Co.*, 253 Md. 430, 441, 253 A.2d 742, 748 (1969), that "[a]s a general rule, and unless the indemnity contract provides otherwise, an indemnitee is entitled to recover, as part of the damages, reasonable attorneys' fees." Further, respondent argues that the applications were timely filed and that the statute of limitations runs on indemnity claims from the date payment becomes due, not the date of the underlying breach. Finally, respondents note that the applications were allowed as further relief under § 3–412 of the Courts and Judicial Proceedings Article.

## III.

As concerns the grant of attorney fees, Maryland follows the common law "American Rule," which states that, generally, a prevailing party is not awarded attorney's fees "unless (1) the parties to a contract have an agreement to that effect, (2) there is a statute that allows the imposition of such fees, (3) the wrongful conduct of a defendant forces a plaintiff into litigation with a third party, or (4) a plaintiff is forced to defend against a malicious prosecution." *Thomas v. Gladstone*, 386 Md. 693, 699, 874 A.2d 434, 437 (2005).[3] In *St. Luke Church v. Smith*, 318 Md. 337, 358–59, 568 A.2d 35, 45 (1990),

---

**3.** Another exception to the American Rule is recognized for "an insured who defends against liability and is forced to challenge decisions of his or her insurer in respect to policy coverage issues." *Megonnell v. United Services*, 368 Md. 633, 659, 796 A.2d 758, 774 (2002). We have declined to extend this exception to cover third party attorney's fees in a suit to force an insurer to provide coverage. *See id.* at 660–61, 796 A.2d at 774–75. We do not find the insured exception relevant to the circumstances of the case sub judice, where an insurer, rather than an insured, seeks indemnification in a first party action, rather than for defending against a third party action.

we said that counsel fees generally are not awarded as damages, absent a contract providing to the contrary, or special circumstances. We included as examples of special circumstances "cases where the defendant's wrongful conduct has involved the plaintiff in litigation with others, *certain implied indemnity actions,* and actions resulting in declaratory judgments that a liability insurer must defend the insured in a particular action." *Id.* at 359 n. 2, 568 A.2d at 46 n. 2. (citations omitted) (emphasis added).

Respondent's first argument as to why it is entitled to first party attorney's fees relies upon the "implied indemnity action" special circumstance identified in *Smith.* The implied indemnity exception in Maryland originated in *Jones v. Calvin B. Taylor Banking Co.,* 253 Md. 430, 441–42, 253 A.2d 742, 748 (1969). In *Jones,* a bank entered into a financing agreement accepting assignment of a manufacturer's accounts receivable and the responsibility of making disbursements to the manufacturer's suppliers. In return, the manufacturer's officers personally executed a note to the bank, guaranteeing against any loss in connection with the transaction. Thereafter, the manufacturer was adjudged bankrupt and the trustee in bankruptcy recovered from the bank certain transaction amounts. The bank, in turn, was awarded a judgment against the manufacturer's officers to recover the losses suffered as a result of the bank's liability under the financing agreement. Following a bench trial, a judgment was entered in favor of the bank, including the bank's attorney's fees, in connection with the trustee in bankruptcy action.

The officers appealed, *inter alia,* the award of attorney's fees accrued from defense of the third party action. This Court affirmed the grant of attorney's fees, implying a fee-shifting provision to allow an indemnitee to recover reasonable attorney's fees incurred in defending against a third party. We stated in part that "[a]s a general rule, and unless the indemnity contract provides otherwise, an indemnitee is entitled to recover, as part of the damages, reasonable attorneys' fees." *Jones,* 253 Md. at 441, 253 A.2d at 748 (quoting 41 Am.Jur.2d Indemnity, § 36 at 727 (1968)). The relied upon

quotation is taken out of context. This proposition, when considered in context, does not accurately settle the matter where first party indemnification claims are involved. The source quoted in *Jones* goes on to say in the following sentence that "[t]he allowance of attorneys' fees is limited to the defense of the claim indemnified against and does not extend to services rendered in establishing the right of indemnity." 41 Am.Jur.2d Indemnity, § 36 at 727 (1968). The *Jones* holding was limited to circumstances where the indemnitee sought to recover "the amount of the counsel fee incurred by the Commissioners in defending the suit" against a third party. *Jones,* 253 Md. at 442, 253 A.2d at 748. *See also C. & O.C. Co. v. County Comm'rs,* 57 Md. 201, 226 (1881) (holding that "in conducting a defense made necessary by the default of another who is answerable over, the services of an attorney are a natural and proper incident or consequence to such a proceeding"). *Jones* does not provide the support claimed by Penske, and we decline to read *Jones* so expansively as to imply indemnity for first party attorney's fees.

Penske's second argument in support of granting first party attorney's fees is based on the contract exception to the American rule. As noted earlier, another recognized exception to the American rule prohibiting the recovery of prevailing party attorney's fees is where the contract provides otherwise. *See Thomas v. Gladstone,* 386 Md. at 699, 874 A.2d at 437. *See also Empire Realty Co. v. Fleisher,* 269 Md. 278, 286, 305 A.2d 144, 148 (1973) ("[I]n the absence of special circumstances, as where the parties to a contract agree on the payment of attorney's fees, ... counsel fees are not a proper element of damages"); *Webster v. People's Loan Etc. Bank,* 160 Md. 57, 61, 152 A. 815, 817 (1931) ("That the parties to a contract have the right to agree for the payment of an attorney's fee in the event of default in payment by the promisor has long been recognized in the decisions of this court").

 Contract clauses that provide for the award of attorney's fees generally are valid and enforceable in Mary-

land, subject to a trial court's examination of the prevailing party's fee request for reasonableness. *Myers v. Kayhoe,* 391 Md. 188, 207, 892 A.2d 520, 532 (2006).[4] The interpretation of a written contract is a question of law for the court subject to *de novo* review. *Diamond Point v. Wells Fargo,* 400 Md. 718, 751, 929 A.2d 932, 951 (2007). Maryland applies an objective interpretation of contracts. *Id.* If a contract is unambiguous, the court must give effect to its plain meaning and not contemplate what the parties may have subjectively intended by certain terms at the time of formation. *Id.* at 751, 929 A.2d at 952. A contract is ambiguous if, when read by a reasonably prudent person, it is susceptible of more than one meaning. *Id.* In interpreting a contract provision, we look to the entire language of the agreement, not merely a portion thereof. *Jones v. Hubbard,* 356 Md. 513, 534–35, 740 A.2d 1004, 1016 (1999). When interpreting a contract's terms, we consider "the customary, ordinary and accepted meaning of the language used." *Atlantic v. Ulico,* 380 Md. 285, 301, 844 A.2d 460, 469 (2004).

In *Atlantic,* this Court was faced with whether to award attorney's fees in a first party action to recover loss arising out of a surety bond with an indemnity agreement. *Id.* Under the agreements, Ulico was to act as a surety for Atlantic, and issued a performance and payment surety bond on behalf of Atlantic to a third party. The third party made a claim on the bond, and Ulico brought suit against Atlantic in an effort to recover the loss it suffered paying out on the bond. Ulico also sought attorney's fees incurred in the first party action to obtain indemnification from Atlantic. The trial court awarded reasonable attorney's fees, costs, and expenses.

Atlantic noted a timely appeal challenging, among other things, the award of attorney's fees. Notably, this Court did

---

4. The party requesting fees has the burden of providing the court with the necessary information to determine the reasonableness of its request. *Myers v. Kayhoe,* 391 Md. 188, 207, 892 A.2d 520, 532 (2006). Reasonableness of fees is a factual determination within the sound discretion of the court, and will not be overturned unless clearly erroneous. *Id.*

not uphold the award under the rule articulated in *Jones*, implied fee-shifting for attorney's fees from third party defensive actions. Rather, we upheld the award of attorney's fees after interpreting the indemnification contract. The indemnity agreement covered "from and against any and all Loss." The agreement then went on to define "Loss" in relevant part as follows:

"Any and all damages, costs, charges, and expenses of any kind, sustained or incurred by [the indemnified party] in connection with or as a result of: (1) the furnishing of any Bonds; and (2) *the enforcement of this Agreement.*"

*Id.* at 302, 844 A.2d at 469 (emphasis added). We then reasoned as follows:

"[U]nder the terms of the indemnity agreement, Atlantic was obligated by contract to pay Ulico the sums it incurred to enforce the agreement, which included its attorney's fees, costs, and expenses. Indemnity agreements *of this kind* are interpreted generally to entitle the surety to recover fees, costs, and expenses incurred in enforcing them."

*Id.* at 316–17, 844 A.2d at 478 (emphasis added) (citation omitted).

Our holdings in *Jones* and *Atlantic* do not obviate the need to apply contract interpretation to determine the scope of the indemnification provision and whether the clause covers first party enforcement rights. The scope of indemnification is a matter of contract interpretation, and as such may or may not include attorneys' fees in first party enforcement actions, in addition to the standard allowance of attorney's fees in defense of suits by third parties. This concept is expressed in DAN B. DOBBS, LAW OF REMEDIES § 3:10(3) n. 5 (2d Ed. 1993), which states that "[w]hether the contract covers only fee costs incurred in third party litigation or also covers fee costs incurred in litigation between the parties themselves is of course a question to be answered by interpretation of the contract." [5]

---

**5.** The treatise corrects a common misperception, stating as follows:

The contract in the case *sub judice* was primarily a rental agreement with a liability protection clause that provided insurance coverage. Nova purchased the rental of the trailer and insurance of up to $100,000 from Penske. In addition, as part of the Agreement, Penske was to be indemnified and held harmless for any loss liability or expense above and beyond the $100,000 in liability protection that Penske was to provide. The Agreement stated that Nova was responsible to indemnify Penske for loss over this amount that occurred "as a result of bodily injury, death or property damage caused by or arising out of the ownership, maintenance, use or operation of Vehicle." In addition, in the section entitled "Customer's Responsibilities; Refueling Service Charges; Breakdown Expenses," a second indemnification provision called for Nova to "indemnify, and hold harmless Penske . . . from and against all loss, liability and expense caused or arising out of Customer's failure to comply with the terms of this Agreement." The provision goes on in parts (B) through (H) to require Nova to pay for refueling, tolls and trip permits or licenses, unauthorized service, towing expenses, etcetera.

We note that the second indemnification clause, read as part of the contract as a whole, is not the same as an indemnification agreement in the context of creditor-debtor or surety agreements, as it was in *Jones* and *Atlantic*. In the latter cases, the sole purpose of the arrangement was to secure credit or a guarantor. The creditor or guarantor relied on indemnification as assurance in undertaking the deal. Here, the primary purpose of the contract was to lease a truck and trailer. In addition, the agreement called for Penske to provide liability coverage to Nova. The second indemnification

---

"One rule often stated is that the plaintiff may recover for litigation expenses in prior litigation with third parties, but not for expenses incurred in litigation with the defendant. As shown below, the 'third parties' limitation is not accurate; in appropriate cases the plaintiff may also recover for expenses in litigation with the defendant himself."

DAN B. DOBBS, LAW OF REMEDIES § 3:10(3), at 401 (2d Ed. 1993). Stated otherwise, whether indemnification coverage extends to first party litigation expenses is a matter of contract interpretation.

provision, as was determined by the Circuit Court, operated to negate Penske's obligation to provide liability protection if Nova breached the contract. It also, by a plain reading of its inclusion in the subheading that deals with refueling charges and breakdown expenses, served to exempt Penske from any miscellaneous fees Nova might accrue in breach of contract by refusing to refuel the vehicle, subjecting the vehicle to unauthorized service or maintenance, towing expenses, and related matters. It was not a provision to protect a creditor or surety, but was instead meant to protect a commercial lessor against tort and casualty loss.

The indemnification provision, which encompasses loss "caused or arising out of" the failure to comply with the agreement, is distinctly different from the loss provision in *Atlantic*. The agreement in *Atlantic* stated explicitly that it covered loss "sustained or incurred ... in connection with or as a result of ... the enforcement of this Agreement." *Atlantic*, 380 Md. at 302, 844 A.2d at 469. The contract in the case *sub judice* does not so provide. Interpreting the indemnification provision in the context of the contract as a whole, we do not find support that the parties intended the indemnification to cover first party attorney's fees. In examining the scope of the indemnification provision, we find no express fee shifting provision. Under *Jones v. Calvin B. Taylor Banking Co.*, 253 Md. 430, 441–42, 253 A.2d 742, 748 (1969), we implied a fee-shifting provision to allow an indemnitee to recover reasonable attorney's fees incurred in defending against a third party. Where the contract provides no express provision for recovering attorney's fees in a first party action establishing the right to indemnity, however, we decline to extend this exception to the American rule, which generally does not allow for prevailing parties to recover attorney's fees.

In reaching this conclusion, we note first that our decision in *Jones*, allowing for recovery of attorney's fees incurred in defense of claims by third parties, is already a great expansion of the exceptions to the American rule. Several courts refuse to imply such fee-shifting into contracts, and

instead require the explicit use of the phrase "attorney's fees." *See, e.g., Woodhaven Homes & Realty v. Hotz,* 396 F.3d 822 (7th Cir.2005) ("Wisconsin courts will not construe an obligation to pay attorney fees unless contract language 'clearly and unambiguously so provides' "); *Zissu v. Bear, Stearns & Co.,* 805 F.2d 75, 77 (2d Cir.1986) (indemnity clause in a securities agreement that protected "against *any and all loss,* damage or liability due to or *arising out of a breach* of any representation or warranty," with no mention of attorney's fees, did not meet the requisite level of specificity necessary to hold a party liable for attorney's fees where the indemnified party defended against a third party claim) (emphasis in original). Our reasoning in *Jones* aligns us with those states that do not strictly require the phrase "attorney's fees" in a contract to override the American rule. *See, e.g., Tubb v. Bartlett,* 862 S.W.2d 740 (Tex.Ct.App.1993).

To extend the exception urged upon us by Penske to permit parties initiating first party actions to enforce indemnification rights to recover attorney's fees would be overbroad. If we were to imply a fee-shifting provision for first party actions, even where the contract does not permit one expressly, the exception would swallow the rule, and the presumption of the American rule disallowing recovery of attorney's fees would, in effect, be gutted. This result is in accord with the result we reached with respect to attorney's fees in insurance actions. In *Bausch & Lomb,* 355 Md. 566, 591–92, 735 A.2d 1081, 1095 (1999) (quoting *Collier v. MD–Individual Practice,* 327 Md. 1, 16–17, 607 A.2d 537, 542–45 (1992)), we stated as follows:

"From the standpoint of a strict application of the American rule, there is no logical reason why the successful plaintiff's action on a liability insurance policy for breach of a promise to defend, or to pay the cost of defense, should include counsel fees in prosecuting the breach of contract action, when successful plaintiffs' actions for other breaches of insurance contracts, or for breaches of other contracts, do not ordinarily include those counsel fees. The Maryland rule awarding to the successful insured counsel fees in declaratory judgment or assumpsit actions with liability

insurers for breach of the promise to defend or to pay the cost of defense is an exception to the American rule. To extend that exception to health insurers, who breach their contracts by failure to pay covered benefits, will only compound the anomaly. It would probably mark the elimination of the American rule as to contract actions against insurers generally and leave in doubt the efficacy of the American rule as to other types of contracts."

Our holding comports with the generally accepted rule, requiring that a contract provision must call for fee recovery expressly for establishing the right to indemnity in order to overcome the application of the American rule. "Most courts distinguish between the recovery of attorney's fees incurred in defending against the third-party claim and those expended in prosecuting a claim against the indemnitor. Unless the indemnity provision expressly permits the recovery of fees incurred in prosecuting claims against the indemnitor, such fees are not recoverable." PHILIP L. BRUNER & PATRICK J. O'CONNOR, JR., 3 CONSTRUCTION LAW § 10:51 (2007). *See also Vallejos v. C.E. Glass Co.,* 583 F.2d 507, 510 (1978) ("It is true that in connection with indemnity claims recovery may generally be had for attorneys' fees and expenses incurred in defense against the principal claim, but not for those incurred in establishing the right of indemnity"); *Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 491 F.2d 192, 198 n. 9 (8th Cir.1974) ("[Attorneys'] fees are limited, however, to those incurred in the defense of the claim indemnified against, and there should be no recovery for fees and expenses incurred in establishing the right to indemnity").

The reasoning behind the distinction between attorney's fees in third party claims and first party actions for indemnity was articulated clearly in *Peter Fabrics, Inc. v. S.S. Hermes,* 765 F.2d 306 (2d Cir.1985). The United States Court of Appeals for the Second Circuit explained as follows:

"Indemnity obligations, whether imposed by contract or by law, require the indemnitor to hold the indemnitee harmless from costs in connection with a particular class of claims. Legal fees and expenses incurred in defending an indemni-

fied claim are one such cost and thus fall squarely within the obligation to indemnify. Consequently, attorney's fees incurred in defending against liability claims are included as part of an indemnity obligation implied by law, and reimbursement of such fees is presumed to have been the intent of the draftsman unless the agreement explicitly says otherwise.... Such reasoning does not apply to fees and expenses incurred in establishing the existence of an obligation to indemnify, since such expenses are not by their nature a part of the claim indemnified against. Rather, they are costs incurred in suing for a breach of contract, to wit, the failure to indemnify. As such, fees and expenses incurred in establishing the indemnity obligation fall within the ordinary rule requiring a party to bear his own expenses of litigation, *see Berger, Court Awarded Attorneys' Fees: What is "Reasonable"?*, 126 U.Pa.L.Rev. 281, 281 (1977). *Cf.* 5 Corbin, *Contracts* § 1037 (1964) (attorneys' fees and expenses may be recovered if they constitute damages from the breach of a contract but not if they are incurred in proving the breach)."

*Id.* at 316 (some citations omitted).

One instructive example is *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186 (2d Cir.2003). In *Oscar Gruss*, the United States Court of Appeals for the Second Circuit had to determine whether an indemnification provision applied only to claims brought by third parties or whether it applied also to claims brought between the parties to the agreement. The indemnification provision provided for reimbursement of any legal expenses incurred

"in connection with investigating, preparing to defend or defending, or providing evidence in or preparing to serve or serving as a witness with respect to, any lawsuits, investigations, claims or other proceedings arising in any manner out of or in connection with the rendering of services by the Advisor hereunder *(including, without limitation, in connection with the enforcement of this Agreement* and the indemnification obligations set forth herein)."

*Id.* at 199 (emphasis in original). The court determined nonetheless that, construing the language in context with the surrounding contractual provisions, the right to attorney's fees applied only to claims brought by third parties, and not to an action commenced by the indemnitee against the indemnitor. *Id.* at 200. The court reasoned as follows:

"Promises by one party to indemnify the other for attorneys' fees run against the grain of the accepted policy that parties are responsible for their own attorneys' fees. Under New York law, 'the court should not infer a party's intention' to provide counsel fees as damages for a breach of contract 'unless the intention to do so is unmistakably clear' from the language of the contract."

*Id.* at 199 (citations omitted). As explained by one commentator in a recognized treatise on attorney's fees:

"In a breach of contract action between the parties to an agreement that included an indemnification clause which encompassed legal expenses, the court concluded that the indemnification provision applied only to claims brought by third parties and not to claims such as the present one between the parties to the agreement. . . . In so ruling, the court relied in part on principles that contractual attorney's fees provisions must be strictly construed to avoid inferring duties that the parties did not intend to create and that promises by one party to indemnify the other for attorney's fees run against the grain of the accepted policy that parties are responsible for their own fees."

ROBERT L. ROSSI, ATTORNEYS' FEES § 9:18 (3d Ed. 2002, Cum. Supp. 2007).

Many other courts have reached a similar conclusion. *See also Smoak v. Carpenter Enterprises, Inc.,* 319 S.C. 222, 460 S.E.2d 381, 383 (1995) (refusing to grant first party attorney's fees under a contractual indemnification provision not "specifically dealing with the recovery of attorney's fees . . . in an action between the parties" as opposed to those incurred in third party actions); *Hooper Assocs. v. AGS Computers,* 74 N.Y.2d 487, 549 N.Y.S.2d 365, 548 N.E.2d 903, 905 (1989)

**456**

(holding that the indemnification clause did not "contain language clearly permitting plaintiff to recover from defendant the attorney's fees incurred in a suit against defendant. On the contrary, it is typical of those which contemplate reimbursement when the indemnitee is required to pay damages on a third-party claim"); *Otis Elevator Co. v. Toda Constr.*, 27 Cal.App.4th 559, 32 Cal.Rptr.2d 404, 406 (1994) (declining to adopt a broad reading of an indemnity provision that called for attorney's fees where "[t]he provision does not specifically state ... that [the plaintiff] would be entitled to such fees in an action to enforce the indemnity provision of the subcontract"); *Merrimack School Dist. v. National School Bus Service, Inc.*, 140 N.H. 9, 661 A.2d 1197, 1200–01 (1995) (holding that "[t]he language relied on by the plaintiff suggests that the defendant would be responsible for any damages suffered by the plaintiff as a result of the defendant's breach of the contract, but does not support the plaintiff's contention that the language was intended to include attorney's fees incurred to enforce the agreement"); *U.S. v. Hardy*, 916 F.Supp. 1385 (W.D.Ky.1996) (same); *Republic Ins. Co. v. Pat DiNardo Auto Sales, Inc.*, 44 Conn.Supp. 207, 678 A.2d 516 (1995) (same); *Seifert v. Regents*, 505 N.W.2d 83 (Minn.Ct.App.1993) (same); *Gen. Elec. Co. v. Mason & Dixon Lines, Inc.*, 186 F.Supp. 761, 766 (W.D.Va.1960) ("The allowance of attorneys' fees should be limited to the defense of the claim indemnified against and does not extend to services rendered in establishing the right of indemnity. It is fundamental that there should be no recovery for attorneys' services and expenses incurred in establishing the right of indemnity"); *Swiss Credit Bank v. Int'l Bank Ltd.*, 23 Misc.2d 572, 200 N.Y.S.2d 828 (Sup.1960) (unreported) (a contract clause to indemnify acted as "a general agreement for the payment of counsel fees," but was held not to include counsel fees in the suit to collect those fees, with the court noting that "[o]f course, it is possible to contract for such an allowance but, as it is an agreement contrary to what is usual, specific language would be needed to show such an agreement").

Although some courts have interpreted a contract provision to include first party attorney's fees incurred in enforcement actions, the vast majority of the contracts involved in those cases explicitly allowed for the recovery of attorney's fees by express inclusion of the phrase "attorney's fees" in the respective indemnity provisions.[6] *See, e.g., Dalton v. Childress Service Corp.*, 189 W.Va. 428, 432 S.E.2d 98, 102 (1993) (allowing for the recovery of attorney's fees in an enforcement action, but notably where the contract indemnification clause provided for *"any and all* cost[s] and expenses *including attorneys' fees ..."*) (emphasis in original); *RJF Int'l Corp. v. B.F. Goodrich Co.*, 880 S.W.2d 366, 371–72 (Mo.Ct.App.1994) (finding that an agreement "to indemnify and hold harmless Seller (BFG) from and against any and all claims, liabilities, damages, losses, costs and expenses, *including without limitation, reasonable counsel fees* and disbursements" included first party attorney's fees) (emphasis added); *Tack's Steel Corp. v. ARC Constr. Co.*, 821 N.E.2d 883, 890 (Ind.Ct.App. 2005) (finding that, where an agreement to indemnify expressly included attorney's fees, "such broad clauses specifically including attorney fees encompass fees for prosecuting the

---

**6.** The dissent relies solely on *Manson–Osberg Co. v. State*, 552 P.2d 654 (Alaska 1976), which held that a broad indemnification clause allows for recovery of attorney's fees in a first party indemnification action. The *Manson–Osberg* view is a distinct minority view; it was so in 1976, and remains so today. *See id.* at 660 n. 11 ("In so deciding we are not unmindful that the general rule holds the other way"); *Chetopa State Bancshares, Inc. v. Fox*, 6 Kan.App.2d 326, 628 P.2d 249 (1981) ("Except for an Alaska decision in 1976 (*see Manson–Osberg Company v. State*, 552 P.2d 654) predicated upon a statute and public policy determination that costs of enforcing an indemnity contract are recoverable, the holdings in other states appear to be reasonably uniform. As in Kansas, most states have a postulate that attorney fees are recoverable only if provided by statute or contract. Absent a statute, there must be express contractual language"). *Manson–Osberg* has had little impact nationally. *Cf. Pike Creek Chiropractic Center, P.A. v. Robinson*, 637 A.2d 418, 422 (Del.1994) (quoting *Manson–Osberg* with approval when holding first party attorney's fees were recoverable, but in a case where the indemnification clause expressly included the phrase "attorney's fees"); *Transamerica Premier Ins. Co. v. Nelson*, 110 Nev. 951, 878 P.2d 314 (1994) (citing *Manson–Osberg* when holding that, specific only to surety actions, a surety may recover the cost of first party attorney's fees in enforcement actions).

claim for indemnification" as well as in defense against third party suit). Because of our holdings in *Jones*, that the indemnity agreement need not contain the express phrase "attorney's fees," and *Atlantic*, where indemnifying against loss "including in the enforcement of the agreement" encompassed first party attorney's fees, we adopt the approach followed by the majority of states, and require that the contract provide expressly for recovery in first party enforcement actions. The contract in the case before us does not explicitly cover expenses in the enforcement of the contract; therefore, we shall not imply the recovery of attorney's fees accrued in a first party action establishing the right to indemnity.

## IV.

The second question we address is whether Penske's submission of Applications for Costs and Expenses was proper under the provision for further relief in Maryland's Declaratory Judgment Act, Md. Code (1974, 2006 Repl. Vol.), § 3–412 of the Courts and Judicial Proceedings Article. Section 3–412 states in relevant part as follows:

"(a) Further relief.—Further relief based on a declaratory judgment or decree may be granted if necessary or proper.

"(b) Application.—An application for further relief shall be by petition to a court having jurisdiction to grant the relief.

"(c) Show cause order.—If the application is sufficient, the court, on reasonable notice, shall require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted."

The statutory scheme expressly permits further relief based on a declaratory judgment if necessary or proper, either in a separate action or by application by a court who retains jurisdiction. We have said that, based on this framework, "[c]onsequently, the traditional principles of *res judicata* are inapplicable in this context, as they would prevent bringing the action for further relief that is expressly permitted by 3–

412(a)." *Bankers & Ship. Ins. v. Electro Enter.*, 287 Md. 641, 653, 415 A.2d 278, 285 (1980) (allowing the prevailing party in a declaratory judgment action to bring a separate action for further relief). The effect of a declaratory judgment action "is not to merge a claim in the judgment or to bar it." Restatement of the Law (Second), Judgments § 76, Comment c (Tent. Draft No. 3, 1976). That the effect of a declaratory judgment should not bar a further claim applies as well to cases where further relief is requested by way of application, rather than through filing a separate action.

The type of further relief by application granted in this case is the type the statute recognizes. We have indicated as much in *Electro–Nucleonics v. WSSC*, 315 Md. 361, 375 n. 4, 554 A.2d 804, 811 n. 4 (1989), where we stated that "[w]e do not imply that the timeliness of the counterclaims for compensation filed by the defendants in [the] declaratory judgment action ... is to be measured from the date of taking of Site 2." Citing § 3–412 as our authority, we went on to say that "[t]hus, in lieu of counterclaiming, the counterclaimants in [*Washington Suburban Sanitary Com'n v.*] *Frankel*[, 57 Md. App. 419, 470 A.2d 813 (1984)] could have awaited the final declaratory decree and, if it were adverse to WSSC, could have then sought just compensation in the declaratory judgment action or commenced separate actions for relief based on that judgment." *Id.* (emphasis added).

■■■■■ The express language of § 3–412 allowing a court to grant further relief requested through application if necessary or proper directly contradicts Nova's contention that the claim must be filed in a separate action. The Maryland Declaratory Judgments Act, in § 3–414, provides that the Act is to be construed in harmony with federal law:

"This subtitle shall be interpreted and construed to make uniform the law of those states which enact it, and to harmonize, as far as possible, with federal laws and regulations on the subject of declaratory judgments and decrees."

*See Hamilton v. McAuliffe*, 277 Md. 336, 340 n. 2, 353 A.2d 634, 637 n. 2 (1976). The language in § 3–412 is nearly

identical to the federal statute granting further relief. See 28 U.S.C. 2202 (2006).[7] The United States Court of Appeals for the Second Circuit interpreted the further relief provision of the federal statute in *Edward B. Marks Music Corp. v. Charles K. Harris Music Pub. Co.*, 255 F.2d 518 (2d Cir.1958). The plaintiff, after receiving a declaratory judgment in its favor, appealed the denial of its motion for an accounting. The Second Circuit, citing the statute, said that:

> "If plaintiff is not barred by laches this relief is proper.... We take [28 U.S.C. 2202] to mean that the further relief sought—here monetary recompense—need not have been demanded, or even proved, in the original action for declaratory relief. The section authorizes further or new relief based on the declaratory judgment, and any additional facts which might be necessary to support such relief can be proved on the hearing provided in the section or in an ancillary proceeding if that is necessary. Here the further demand for relief is based on the declaration of plaintiff's ownership of the songs at issue and, unless otherwise barred, is proper under the statute."

*Id.* at 522 (citations omitted). Thus under a statute granting further relief, a court generally has jurisdiction to grant all further and necessary or proper relief to effectuate the declaratory judgment entered by the court. *See, e.g., City of Paducah v. Electric Plant Bd. of City of Paducah*, 449 S.W.2d 907, 910 (Ky.Ct.App.1970) (finding that plaintiff's argument that the parties did not and therefore could not litigate the collection of payments in the declaratory judgment action overlooked the existence of the statutory provision granting further relief); *Pan Am. Petroleum Corp. v. El Paso Natural Gas Co.*, 77 N.M. 481, 424 P.2d 397, 401 (1966) (interpreting a statutory provision granting further relief as typically allowing for a coercive decree to carry into effect the requested declar-

---

7. 28 U.S.C. § 2202 specifically provides as follows:

"Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

atory judgment). Under a statute authorizing further relief, the court is permitted to make further orders necessary to effectuate the judgment without the need to initiate a separate proceeding. *See Gardner v. Berkman*, 365 Mass. 481, 312 N.E.2d 563, 565 (1974) (holding that "[a] separate petition for consequential relief is not required by G.L. c. 231A, § 5, 'where the court which hears the bill for declaratory relief has jurisdiction to grant the further relief' "); *Torbett v. Wheeling Dollar Savs. & Trust Co.*, 173 W.Va. 210, 314 S.E.2d 166, 170–71 (1983) (holding that, in declaratory judgment actions, it was unnecessary for parties to file a separate complaint as a prerequisite to obtaining further relief in the form of damages). We find no merit in Nova's challenge to the procedure employed by Penske and authorized under § 3–412.

In conclusion, we hold that Penske is not entitled to first party attorney's fees in the declaratory judgment action establishing its right to indemnity. The Court of Special Appeals was correct, however, in distinguishing between attorney's fees and the request for other consequential expenses arising from the accident and included in the Application for Costs and Expenses. Although Penske may not recover first party attorney's fees in the present action, Penske is entitled to reasonable attorney's fees in defense of the third party suit in Texas prior to its dismissal, as well as the other accident-related costs, as the applications for costs and expenses were proper.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND THIS CASE TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE EQUALLY DIVIDED BY THE PARTIES.*

Dissenting Opinion by BATTAGLIA, J., which BELL, C.J. and GREENE, J. join.

I respectfully dissent.

In the present case, the Circuit Court for Prince George's County found that, although Nova Research, Inc., ("Nova") breached the terms of a rental agreement and must indemnify Penske Truck Leasing, LLP, ("Penske") for "any claims arising out of said loss," that Nova is not responsible for attorney's fees that Penske incurred while establishing the right to indemnity, under the American Rule.[1] Penske appealed to the Court of Special Appeals, arguing, in part, that cases involving attorneys fees under contracts of indemnity are one of the exceptions to the American Rule and that court, in an unreported opinion, agreed with Penske that it was entitled to reasonable attorney's fees. Although the majority agrees with the Circuit Court's rationale, I agree with that portion of the unreported opinion of the Court of Special Appeals authored by Judge Sally E. Adkins, then writing for that court, which, relative to the question at bar, stated:

The principle underlying the "contract exception" to the American Rule regarding attorney's fees is that, "when the defendant has breached a specific [contractual] duty to protect the plaintiff from litigation expenses, the defendant is necessarily liable for those expenses, including attorney's fees." 1 Dan B. Dobbs, *Dobbs Law of Remedies* § 3.10(3), at 401 (2d ed. 1993). In appropriate cases, the plaintiff may recover for expenses incurred in litigating with third parties or the indemnitor. *See id.; Jones v. Calvin B. Taylor Banking Co.*, 253 Md. 430, 441–42 [253 A.2d 742] (1969) (bank could recover fees incurred to litigate claim against bankrupt debtor, from officers of debtor who indemnified bank against loss arising from dealings with debtor).

In determining whether the defendant has agreed to accept the financial burden of the plaintiff's litigation expenses, explicit language stating that the duty to indemnify encompasses attorney's fees is helpful, but not essential. *See Dobbs, supra,* at 402; *cf., e.g., Overmyer v. Lawyers Title*

---

1. The common law "American Rule" prohibits the recovery of attorney's fees by the prevailing party in a lawsuit absent certain exceptions. *Thomas v. Gladstone,* 386 Md. 693, 699, 874 A.2d 434, 437 (2005).

*Ins. Corp.*, 32 Md.App. 177, 187 [359 A.2d 260] (1976) (agreement stated that the " 'hold harmless' proviso embraced ... attorney's fees"), *cert. denied,* 278 Md. 730 (1976), *cert. denied,* 429 U.S. 1123, 97 S.Ct. 1159 [51 L.Ed.2d 573] (1977). Due to the inherent nature of such agreements, indemnity and hold harmless clauses are typically construed as an undertaking to pay attorney's fees.

In *Jones v. Calvin B. Taylor Banking Co.*, 253 Md. at 411[441]–42 [253 A.2d 742], the Court of Appeals recognized that, " '[a]s a general rule, **and unless the indemnity contract provides otherwise,** an indemnitee is entitled to recover, as part of the damages, reasonable attorneys' fees[.]' " (Emphasis added and citation omitted.) Similarly, in *Atlantic Contracting & Material Co. v. Ulico Cas. Co.*, 389[380] Md. 285, 302[, 844 A.2d 460] (2003[2004]), an indemnity contract providing that the covered "Loss" included "all damages, costs, charges, and expenses of any kind, sustained ... as a result of ... the enforcement of this agreement" was construed to cover attorney's fees.[2] *See generally* 42 C.J.S. *Indemnity* 20 ("As a general rule, an indemnitee is entitled to recover, as a part of the damages, reasonable attorney fees, and reasonable and proper legal costs and expenses, even though not expressly mentioned[.]").

2. We reject Nova and Fireman's argument that these cases can be distinguished on their facts. In *Jones v. Calvin B. Taylor Banking Co.*, 253 Md. 430, 439, 253 A.2d 742 (1969), the Court of Appeals affirmed a judgment requiring two individual corporate officers who guaranteed a loan made by the bank to reimburse the bank for losses it suffered "directly from its dealings" with their company, including attorney's fees incurred in representing the bank in bankruptcy matters involving the company. In *Atlantic Contracting & Material Co. v. Ulico Cas. Co.*, 380 Md. 285, 317–18, 844 A.2d 460 (2004), the Court affirmed an award of attorney's fees to the surety on a payment bond, who sued the principal for indemnity in order to recover attorney's fees, costs, and expenses. The factual differences between those cases and the one at bar do not alter the principle of law that governs all three, *i.e.,* that indemnification contemplates reimbursement for attorney's fees and expenses.

There are sound policy and practice reasons for interpreting an indemnity agreement to cover attorney's fees, even with-

out explicit mention of such fees. At its essence, an agreement to indemnify means

> that one of the parties will protect the other from litigation costs or claims brought by third persons as well as from claims between themselves. That is, A contracts to indemnify B and to hold B harmless in the event of claims arising out of their contract. If B permits A to use B's premises, B wants protection against liability arising out of that use, so B gives permission only if A agrees to indemnify B for any expenses incurred. The same indemnity right might be implied in fact or imposed by law, but when it is established by contract, the contract controls, so that attorney fees are awarded under such contracts with no difficulty.

*Dobbs, supra,* at 403 (footnote omitted).

Here, we have a similar scenario. Penske agreed to let Nova use its tractor-trailer in exchange for Nova's promise to indemnify and hold Penske harmless against any and all "loss, liability, and expense" occurring "as a result of bodily injury, death or property damage caused by or arising out of the ownership, maintenance, use or operation of Vehicle." In addition, Nova promised to restrict its use of the tractor-trailer to "regular employees" and intrastate travel, and to indemnify Penske for expense[s] caused or arising out of [Nova's] failure to comply with the[se] terms[.]"

In the first appeal, we recognized that, as a result of the fatal accident, Nova, Fireman's, and Penske litigated in Texas over who would be responsible for tort claims made by the Haley family. Specifically, Penske was hauled into a Texas court to defend itself against Fireman's suit for declaratory judgment that Penske was obligated, under the supplemental insurance terms in the rental agreements, to provide $500,000 of primary insurance coverage to Nova and Fireman's, and that neither Nova nor Fireman's had "any duty to indemnify Penske for a judgment, if any, or defend in any lawsuit, related to this claim[.]"

Penske's defenses to that claim were that Nova's material breach of the rental agreements negated any coverage duty

it might have had to Nova, and that Nova and Fireman's [3] are obligated to indemnify Penske against the costs of having to mount such a defense. Instead of pursuing these defenses in Texas, however, Penske secured a *forum non conveniens* dismissal of the Texas coverage suit, then filed this declaratory judgment action seeking to adjudicate the same breach and indemnification issues raised in the dismissed Texas action. In this respect, Penske's attorney's fees in both the Texas litigation and this declaratory judgment action may be treated as "expenses caused or arising out of" Nova's "failure to comply with the terms of" the rental agreements, as well as Nova's "use or operation of the Vehicle."

3. Just as an indemnitee's insurer may recover fees directly from the indemnitor, so too may an indemnitee recover fees directly from the indemnitor's insurer. When the terms of the insurance policy permit the indemnitor to look to its insurer for payment of the judgment, the risk covered by the policy includes the indemnitor's liability for attorney's fees and costs incurred to obtain that judgment.

Here, Nova agreed to hold Penske harmless for all claims, damages, and losses resulting from its use of the tractor-trailer. In turn, Fireman's agreed to insure Nova against all claims, damages, and losses incurred as a result of its use of automobiles. That agreement necessarily includes coverage for any award made to Penske as reimbursement for expenses it incurred as a result of Nova's use of the tractor-trailer.

Because the parties agreed to allocate such litigation expenses to Nova, the court is obligated to enforce the indemnification agreement by awarding reasonable attorney's fees. In this context, the court does not have the same broad discretion that it enjoys in non-contract cases to deny all such expenses. *See, e.g., Atl. Contracting,* 380 Md. at 316, 844 A.2d 460 (trial court was obligated to include attorney's fees in judgment enforcing indemnity agreement).

The record before us shows that Penske incurred litigation fees and costs in the Texas lawsuit in obtaining a *forum non conveniens* dismissal. In addition, Penske incurred fees and costs in this declaratory judgment action, where it

> obtained a judgment resolving the breach, coverage, and
> indemnity issues first raised in the Texas action.

(emphasis in original).

One of our sister state courts, that of Alaska, has already held that indemnity clauses include attorney's fees incurred in establishing the right to indemnity, even when the indemnity contract does not contain express language explicitly providing for attorney's fees or fees expended in establishing the right to indemnity. *Manson–Osberg Co. v. State,* 552 P.2d 654, 660 (Alaska 1976). In *Manson–Osberg Co.,* the Alaska Supreme Court held "that the 'hold harmless' indemnity clause should include the cost of recovery on the clause itself, as a matter of policy." *Id.* The Court noted that the holding departs from "the general rule," and articulated the reasons for the departure:

> The hold harmless clause required that the [indemnitor] shall save harmless the [indemnitee] from all suits, actions, or claims of any character brought on any account of injuries or damages sustained by any person. The [indemnitee] is not held harmless if it must incur costs and attorney's fees in bringing suit to recover on the indemnity clause. The [indemnitor] on the other hand can avoid such costs and attorney's fees by paying the amount due without the necessity of suit.

*Id.* & n. 11. In a subsequent case, the Alaska Supreme Court, in *Heritage v. Pioneer Brokerage & Sales, Inc.,* 604 P.2d 1059 (Alaska, 1979), further noted, with respect to attorney's fees expended in defending against the principle claim and those incurred in establishing the right to indemnity, that, "[w]e see no reason for distinguishing the two types of attorney's fees, however, and indeed, we recognize that in many cases it would be difficult to separate the expenses involved in each claim, since they are frequently tried simultaneously and may involve proof of overlapping issues of fact." *Id.* at 1066 n. 22.

Therefore, the majority not only departs from our language in *Jones v. Calvin B. Taylor Banking Co.,* 253 Md. 430, 441, 253 A.2d 742, 748 (1969), that " 'unless the indemnity contract

provides otherwise, an indemnitee is entitled to recover, as part of the damages, reasonable attorneys' fees,' " but from sound policy reasons and practical considerations, as articulated by the Alaska Supreme Court, to require that an indemnity contract contain an explicit provision providing either for recovery of attorney's fees or for expenses in the enforcement of the action. The nature of indemnity, however, is inherently to make the indemnitee whole, *see Black's Law Dictionary* 784 (8th ed. 2004) (defining indemnity as "[a] duty to make good *any* loss, damage, or liability incurred by another") (emphasis added), rather than partially compensated. The notion of recovery for only portions of the loss just does not accord *at all* with the notion of indemnity.

As a result, I dissent.

Chief Judge BELL and Judge GREENE authorize me to state that they join in this dissenting opinion.