66 A.3d 1183

FRATERNAL ORDER OF POLICE, MONTGOMERY COUNTY LODGE 35, Et Al.

v.

MONTGOMERY COUNTY, Maryland, Et Al.

No. 107, Sept. Term, 2012.

Court of Special Appeals of Maryland.

May 30, 2013.

William J. Chen, Jr., (Chen & McCabe, LLP, Rockville, MD, Margo Pave, Zwerdling, Paul, Kahn & Wolly, PC, Washington, D.C.), on the brief, for Appellant.

Edward B. Lattner, Chief, (Marc P. Hansen, County Attorney, on the brief), Rockville, MD, for Appellee.

Panel: KRAUSER, C.J., MATRICCIANI, and WATTS, JJ.

MATRICCIANI, J.

On May 26, 2011, the Montgomery County Council ("the Council") passed Council Resolution No. 17–149, which adopted a fiscal year 2012 operating budget to fund its obligations under its police officers' collective bargaining agreement ("CBA"). On June 24, 2011, the Fraternal Order of Police, Montgomery County Lodge 35, and ten of its members (collectively, "the FOP"), filed suit in the Circuit Court for Montgomery County, naming the Council and Montgomery County as defendants. The complaint sought declaratory and injunctive relief and alleged that the Council's actions breached the collective bargaining contract, violated the Montgomery County Police Labor Relations Act ("the PLRA"),[1] and violated the Maryland Declaration of Rights, Articles Nineteen and Twenty–Four.

On March 1, 2012, the circuit court dismissed two counts of the complaint,[2] entered summary judgment in favor of the County and Council on all remaining counts, and issued a declaratory judgment upholding the County and Council's actions as lawful. After the circuit court denied its motion for reconsideration, the FOP noted this timely appeal on April 2, 2012.

## QUESTIONS PRESENTED

The FOP presents one question for our review, which we have rephrased as follows in order to comport with our discussion:

> Did the Montgomery County Council violate the PLRA or the Maryland Declaration of Rights when it passed an operating budget that rejected a proposed amendment to the FOP's collective bargaining agreement and did not fund three categories of employee benefits?

---

**1.** The PLRA is enacted in §§ 33–75 to 33–85 of the Montgomery County Code (2004).

**2.** One count was titled "Mandamus," and the other "Violation of State Constitution."

For the reasons that follow, we answer no and affirm the judgments of the Circuit Court for Montgomery County.

## BACKGROUND

### The Police Labor Relations Act

The Montgomery County PLRA governs negotiations between the County and the members of its police force over collective bargaining agreements and amendments, and it designates their respective bargaining agents: the County Executive and the FOP.[3] PLRA §§ 33–75, 33–76, 33–80. If these two parties cannot reach an agreement, they are bound to submit to an "impasse procedure" in which an arbiter chooses one side's proposed contract to be conveyed to the Council for consideration. PLRA §§ 33–81(b); 33–80(g). The Council then must "indicate by resolution its intention to appropriate funds for or otherwise implement the agreement or its intention not to do so, and ... state its reasons for any intent to reject any part of the agreement." PLRA § 33–80(h).

The PLRA gives the Council unilateral discretion to refuse to fund "conditional wage or benefits adjustments" in whole or in part:

(i) *Adjustments.* Any agreement shall provide either for *automatic reduction or elimination* of conditional wage or benefits adjustments if:

(1) the Council does not take action necessary to implement the agreement, or

(2) sufficient funds are not appropriated for any fiscal year when the agreement is in effect.

---

3. The PLRA reflects the parties' *quid pro quo* in § 33–84(a), which prohibits strikes and lockouts:

No employee or employee organization shall either directly or indirectly cause, instigate, encourage, condone or engage in any strike, nor the employer in any lockout. No employee or employee organization shall obstruct, impede or restrict, either directly or indirectly, any attempt to terminate a strike.

PLRA § 33–80(i) (emphasis added). Accordingly, the collective bargaining agreement in place at the time of the present dispute contained the following language:

Pursuant to § 33–80(g) of the Montgomery County Code, any wage and/or benefit adjustment set forth in this Agreement which requires the Montgomery County Council to take action necessary to implement the Agreement, or to appropriate funds, shall be *automatically reduced or eliminated* if the County Council fails to take the necessary action to implement the Agreement, or *if funds are not appropriated or if a lesser amount is appropriated.*

(Emphasis added.)

If the Council declares its intent to reject any part of a proposed agreement, negotiations continue according to the following process:

... [The Council] shall designate a representative to meet with the parties and present the Council's views in their further negotiations. This representative shall also participate fully in stating the Council's position in any ensuing impasse procedure. The parties shall thereafter meet as promptly as possible and attempt to negotiate an agreement acceptable to the Council. Either of the parties may initiate the impasse procedure set forth in Section 33–81. The results of the negotiation or impasse procedure shall be submitted to the Council on or before May 10....

PLRA § 33–80(h). In the course of these negotiations, the Council can postpone the statutory deadlines for up to fourteen days, by majority vote. *Id.*

### The Present Dispute

In November 2010, the FOP and the County Executive entered negotiations over an amendment to the officers' cash compensation, which the FOP proposed to increase by 3.5%. When the two sides failed to agree, an impasse neutral decided to submit the FOP's proposed increase to the Council. On May 9, the Council declared its intent to reject funding for that proposed amendment, as well as to reject funding for

three existing contractual benefits: retirement benefits, health insurance, and life or disability insurance. The FOP, County Executive, and the Council's representative entered the impasse process, but it was not fruitful; on May 26, 2011, the Council passed Council Resolution No. 17–149, which adopted the Council's previously announced position not to fund the wage increase or employment benefits. The resolution also reduced the County's contributions to the officers' retirement plans and to the officers' life, accidental death and dismemberment, medical, vision, dental, and drug insurance premiums.

The FOP filed the instant suit in the Circuit Court for Montgomery County on June 24, 2011, alleging various causes of action all based on the Council's decision not to adopt the amendment and not to fund the three contractual benefits. On March 1, 2012, the circuit court issued its memorandum opinion and declaratory judgment, holding (and declaring) that the Council's actions were permissible under both the PLRA and the existing bargaining agreement. After the circuit court denied the FOP's motion for reconsideration on March 30, 2012, the FOP noted this timely appeal.

### Discussion

The FOP argues that the circuit court erred and that when the Council adopted Resolution No. 17–149, it violated both the PLRA and the terms of its existing collective bargaining agreement. This argument depends on statutory construction and contractual interpretation, both of which we review *de novo*. *See Miller v. Mathias*, 428 Md. 419, 450, 52 A.3d 53 (2012) ("Statutory construction is a legal question, which we approach and decide de novo[.]"); *Nova Research, Inc. v. Penske Truck Leasing Co., L.P.*, 405 Md. 435, 448, 952 A.2d 275 (2008) ("The interpretation of a written contract is a question of law for the court subject to *de novo* review.").

■ The PLRA is designed to—and does—produce proposed employment contracts and their amendments. Ultimately, however, the Act does *not* state that the Council *must* adopt a proposed agreement, or that it *must* fund its existing

obligation to provide employee benefits. The former is left to the Council's discretion, and the latter is a matter of the County Council's discretion under both PLRA § 33–80(i) and the FOP's existing collective bargaining agreement. Thus, even the FOP recognizes in its brief that "PLRA Section 33–80(h) authorizes the County Council to either appropriate or not appropriate funds needed for the collective bargaining agreement, and to implement or not implement the agreement." But at this point, the FOP's argument goes awry.

The FOP contends that "the PLRA does not give the County Council any authority or power to change the terms of the FOP 35 collective bargaining agreement or any amendment thereto." But a strict prohibition of "changes" appears nowhere in the PLRA; it is the FOP's invention. Even the FOP admits, the "plain language" of PLRA § 33–80(h) authorizes the Council to refuse any proposed amendment and to refuse to fund any employee benefit *in whole or in part,* and the County Council's resolution was consistent with this authority. The FOP's reply brief lists three alleged "changes" to the terms of the existing agreement, but each is merely a reduction in the County's contributions to the officers' insurance and retirement plans. The FOP has failed to explain how the County could reduce funding for these benefits without changing the contributions or, if there were no employee contributions (as in the case of prescription drugs benefits), without selecting a less expensive benefit plan. To the extent that this decision constitutes a "change" to the amended or original agreement, it *is* explicitly permitted by the plain language of PLRA § 33–80(h) and the existing collective bargaining agreement. To hold otherwise would nullify those explicit provisions.

The County Council thus had the express authority and unilateral discretion to reject the proposed wage increase and to fund partially the disputed employee benefits.[4] The circuit

---

4. The FOP's argument that the County Council violated its State and Federal due process rights depends on its argument under the text of the PLRA. Because we reject the latter, we need not address the former.

court did not err when it so held, and we therefore affirm its summary and declaratory judgments.

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**