# District of Columbia
# Court of Appeals

**No. 15-CV-950**

JAMES G. DAVIS CONSTRUCTION CORPORATION,

Appellant,



v.

CAB-3645-08

HRGM CORPORATION,

Appellee.

On Appeal from the Superior Court of the District of Columbia
Civil Division

BEFORE: WASHINGTON, *Chief Judge*; and BECKWITH and EASTERLY, *Associate Judges*.

## J U D G M E N T

This case came to be heard on the transcript of record and the briefs filed, and was argued by counsel. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the judgment of the Superior Court is affirmed.

For the Court:

*Julio A. Castillo*

JULIO A. CASTILLO
Clerk of the Court

Dated: October 6, 2016.

Opinion by Associate Judge Corinne Beckwith.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

FILED 10/6/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

No. 15-CV-950

JAMES G. DAVIS CONSTRUCTION CORPORATION, APPELLANT,

v.

HRGM CORPORATION, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB-3645-08)

(Hon. Judith N. Macaluso, Trial Judge)

(Argued March 15, 2016                    Decided October 6, 2016)

*Stephen M. Seeger* for appellant.

*Craig A. Holman*, with whom *William C. Perdue* was on the brief, for appellee.

Before WASHINGTON, *Chief Judge*, and BECKWITH and EASTERLY, *Associate Judges*.

BECKWITH, *Associate Judge*: This case involves a dispute over attorney's fees. Appellant James G. Davis Construction Corporation and appellee HRGM Corporation entered into a Joint Venture Agreement for the purpose of performing renovation work on McKinley Technical High School in the District. After

completing the project, the parties became engaged in a series of disagreements concerning the management of the Joint Venture and the parties' respective obligations under the Joint Venture Agreement. HRGM eventually sued Davis, and Davis counterclaimed. After a two-week trial, the jury returned a verdict in favor of HRGM, awarding the company $5,056 in compensatory damages and $70,500 in punitive damages. The jury also rejected Davis's counterclaim. HRGM then filed a post-trial motion for attorney's fees and costs under Super. Ct. Civ. R. 54 (d)(2), arguing that such a fee award was authorized by the terms of the Joint Venture Agreement. The trial court granted the motion over Davis's opposition and awarded HRGM $736,152.76 in attorney's fees and $39,344.67 in costs.

Davis now challenges this award on several grounds, arguing primarily that the trial court erred in awarding HRGM attorney's fees under the Joint Venture Agreement. Davis also contends that even if such an award were proper, the trial court abused its discretion by awarding HRGM an unreasonable amount of fees. Unpersuaded by Davis's arguments, we affirm the judgment of the trial court.

## I. Facts

Appellant James G. Davis Construction Corporation and appellee HRGM Corporation are commercial construction companies that entered into a Joint

Venture Agreement in August 2002 for the purpose of serving as general contractor on a project to renovate McKinley Technical High School in Northeast D.C. Under the Agreement, Davis was the managing venturer with responsibility for supervising the project and maintaining the accounting records. Davis was accordingly assigned 80 percent of the project's profits (or losses), and HRGM was assigned 20 percent. The Joint Venture Agreement required that "an independent firm of accountants" conduct "[p]eriodic audits of the books" as well as a "final audit . . . upon completion of the project." The parties completed the project in 2006 at a value of more than $53 million.

During and after the project, HRGM had raised concerns about Davis's management of the Joint Venture, including improper charges to the entity, self-dealing, and a failure to comply with its accounting duties as well as the periodic and final audits required under the Joint Venture Agreement. In March 2007, Davis sent HRGM a letter explaining that HRGM owed the Joint Venture $111,223 for unpaid capital contributions. Believing that this demand was improper under the Agreement, HRGM responded by filing suit against Davis on May 14, 2008, alleging claims for breach of contract, breach of fiduciary duty, and a full and complete accounting. HRGM claimed in particular that Davis breached the Joint Venture Agreement by among other things improperly charging personnel, equipment, supplies, and other costs to the Joint Venture; "[f]ailing to

comply with its accounting obligations" through maintaining accurate records; "[i]mproperly appropriating . . . opportunities belonging to the Joint Venture"; "[e]ngaging in improper self-dealing"; "[d]emanding payment of amounts to the Joint Venture from HRGM without the required final audit"; and generally "[m]ismanaging the Joint Venture such that Davis alleges that the Joint Venture lost money" on the project. In support of its breach of fiduciary duty claim, HRGM alleged that Davis "willfully and maliciously" engaged in the conduct underlying its contract claim. HRGM requested $2.5 million in compensatory damages and $3 million in punitive damages.[1] Davis filed a verified Answer and Counterclaim in which it alleged a breach of contract and sought to recover from HRGM the $111,223 in unpaid capital contributions.

A two-week trial began on January 24, 2011. Before jury deliberations commenced, the trial court provided a standard punitive damages instruction—which both parties had agreed on in their Joint Pretrial Statement—that told the jury to consider "any attorney's fees that [HRGM] has incurred in this case" as one factor in its calculation of punitive damages.[2] *See* Standardized Civil Jury

---

[1] At trial, HRGM reduced its damages request, asking the jury to award "at least $660,339" in compensatory damages as well as an amount in punitive damages that the jury deemed appropriate. *See infra* Section II.D.

[2] The approved instruction read: "If you find that the plaintiff is entitled to

(continued…)

Instructions for the District of Columbia, No. 16-3 (2007 ed. rev.). On February 9, the jury returned a verdict for HRGM on its breach of contract and fiduciary duty claims while rejecting Davis's breach of contract counterclaim.[3] The jury awarded HRGM $5,056 in compensatory damages and $70,500 in punitive damages for the fiduciary duty breach, but no additional damages for the contractual breach. HRGM filed a motion for a new trial on damages, which the trial court denied on August 11, 2011. HRGM did not appeal this decision.

After the jury rendered its verdict, HRGM also filed a post-trial motion for attorney's fees under Super. Ct. Civ. R. 54 (d)(2). HRGM requested $808,692.50 in attorney's fees and $75,530.29 in costs based on Article XXI of the Joint Venture Agreement, which in HRGM's view entitled it to recover from Davis fees based on the litigation. Article XXI provides:

(…continued)
an award of punitive damages, then you must decide the amount of the award. To determine the amount of the award you may consider the relative wealth of the defendant at the time of trial, the nature of the wrong committed, the state of mind of the defendant when the wrong was committed, the cost and duration of the litigation, and any attorney's fees that the plaintiff has incurred in this case. Your award should be sufficient to punish the defendant for his or her conduct and to serve as an example to prevent others from acting in a similar way."

[3] HRGM withdrew its claim for an accounting before the case was submitted to the jury.

## XXI. SCOPE OF VENTURER'S AUTHORITY; INDEMNIFICATION

No Venturer shall take any action on behalf of or in the name of the Joint Venture, or enter into any commitment or obligation binding upon the Joint Venture, except for actions expressly provided for in this Agreement or authorized by the Venturers in the manner set forth herein.

It is understood and agreed that none of the parties hereto nor any of the designees shall have the power to borrow monies for, in the name of, or to pledge the credit of the other party to this Agreement or on their joint credit, or to otherwise obligate the other party to this Joint Venture Agreement to third party creditors.

*Each Venturer shall indemnify and save harmless the other Venturer* and its affiliates, directors, employees and officers from and against any and all claims, demands, losses, damages, liabilities, lawsuits and other proceedings, judgments and awards, and costs and expenses (*including but not limited to reasonable attorneys' fees*) arising directly or indirectly, in whole or in part, out of any breach of the foregoing provisions by the Venturer or its affiliates, officers, agents or employees.

(Emphases added).

Davis opposed the motion, arguing that HRGM failed to satisfy the conditions for the recovery of fees under Article XXI and that HRGM could not in any event pursue post-trial attorney's fees because the jury had already considered and awarded such fees as part of its punitive damages calculation. On March 26,

2012, the trial court issued an order permitting HRGM's post-trial motion for attorney's fees to proceed. The court determined that "on its face [Article] XXI authorizes HRGM's request for fees and costs" and that "the jury awarded damages to HRGM as a result of actions taken by Davis 'on behalf of or in the name of the Joint Venture,' or as a result of 'commitment[s] or obligation[s] binding upon the Joint Venture,' which were a 'breach of the foregoing provisions'" of Article XXI. The court also held that the award of attorney's fees and costs in this case was an issue for the court to resolve rather than an issue that HRGM should have submitted to the jury as an element of damages. Because the jury was instructed to consider attorney's fees as part of its punitive damages award, moreover, the court concluded that the jury did factor these fees into its damages calculation. The court therefore made clear that the punitive damages award "may [be] adjusted (by remittitur or set off) in light of the attorneys' fee award, as necessary to avoid double recovery."

On August 7, 2014, after extensive discovery, the court granted HRGM's motion and awarded the company $736,152.76 in attorney's fees. The court made a separate award of $39,344.67 in costs on July 24, 2015. This appeal followed.

## II. Analysis

Davis advances four main arguments on appeal. First, it contends that the

trial court erred in granting HRGM's post-trial motion for attorney's fees where the jury had already considered such fees as part of its punitive damages award. In Davis's view, this fee award allowed HRGM a double recovery. Second, Davis argues that the trial court erroneously based its award of attorney's fees on Article XXI of the Joint Venture Agreement, "a limited indemnity provision which requires a breach of certain specified limitations in order to trigger the indemnity obligation." Third, Davis contends that even if Article XXI entitled HRGM to attorney's fees in this case, HRGM was "required to prove those attorneys' fees to the Jury as an element of damages under Rule 54 (d)(2), not seek them in a post-trial motion." Finally, Davis asserts that the trial court abused its discretion by awarding an unreasonable amount of attorney's fees.

### A. Punitive Damages and Attorney's Fees

Before jury deliberations began, the trial court instructed the jury, at the parties' request, that if it determined that HRGM was entitled to punitive damages, the jury could consider "the cost and duration of the litigation, and any attorney's fees that [HRGM] has incurred in this case" in calculating the damages award. The jury assessed $70,500 in punitive damages against Davis. Davis asserts that because HRGM pursued and recovered attorney's fees as part of the jury's punitive damages award, HRGM was barred from seeking such fees under the Joint Venture

Agreement in a post-trial proceeding. Davis accordingly contends that the trial court erred as a matter of law in awarding HRGM $736,152.76 in attorney's fees, an award that amounted to an impermissible double recovery for HRGM. We disagree that the trial court erred.

Under the American Rule, a prevailing party in a lawsuit does not recover attorney's fees incurred in the litigation. *St. Luke Evangelical Lutheran Church, Inc. v. Smith*, 568 A.2d 35, 38 (Md. 1990); *see also* 1 Dan B. Dobbs, *Law of Remedies* § 3.10 (3), at 401 (2d ed. 1993). But courts have recognized exceptions to this rule, including where "(1) parties to a contract have an agreement to that effect; (2) there is a statute which allows the imposition of such fees; or (3) the wrongful conduct of a defendant forces a plaintiff into litigation with a third party." *St. Luke*, 568 A.2d at 39 (citations omitted). Relying primarily on *St. Luke*, Davis argues that these exceptions represent "three primary but separate, alternative avenues," and that "HRGM had to strategically elect which one of the possible avenues it would travel—HRGM could not take multiple roads." By requesting a punitive damages instruction that permitted the jury to consider attorney's fees, Davis contends, HRGM "made its choice" and therefore could not as a matter of law seek recovery of fees after trial.

We are unpersuaded that *St. Luke* controls the outcome in this case, as the

court there held only that "whenever punitive damages are appropriate, the amount of reasonable attorney's fees incurred in the pending litigation may be considered by the jury." *Id. at 36*; *see also* Dobbs, *Law of Remedies* § 3.11 (3), at 482 n.23 (characterizing the *St. Luke* court as "recognizing that in a sense the award of attorney fees as a measure of punitive damages is compensatory but also . . . punitive" and noting that "[t]he plaintiff's attorney fee costs at least represent one item to consider in fixing the amount of the punitive award"). The court in *St. Luke* had no occasion to address the question whether a party may pursue attorney's fees under a contractual agreement where the jury was allowed to consider such fees in calculating its punitive damages award, and Davis cites no authority construing *St. Luke*'s brief discussion of the three exceptions as precluding a party in HRGM's position from seeking attorney's fees.

Davis also relies heavily on *Central Armature Works, Inc. v. American Motorists Insurance Co.*, 520 F. Supp. 283 (D.D.C. 1980). It is true that the D.C. District Court held in *Central Armature* that since the plaintiff had already received punitive damages for the defendant's breach of contract, and since "punitive damages are awarded in part to reimburse a plaintiff for litigation expenses," the court would not "make a separate award of attorney fees as an element of compensatory damages," as such an award "would constitute a double recovery." *Id.* at 297. But there was no indication that the parties in that case had

agreed by contract to provide for the recovery of fees, and the court appeared to base its decision in large part on the fact that the jury's $2 million punitive award, which the court deemed "excessive" and therefore reduced by 50 percent, "more than adequately compensate[d] the plaintiff for its litigation costs." *Id.* at 290, 296–97; *see also id.* at 290 (noting that even after the court reduced the "excessive" punitive award, "the punitive judgment remain[ed] substantial," and "[f]or this reason, a separate award of attorney fees [was] unwarranted"). For these reasons, and in view of this court's case law, we decline to read *Central Armature* as establishing a rule that would bar a court from awarding attorney's fees if punitive damages have already been assessed. *See Jemison v. Nat'l Baptist Convention, USA, Inc.*, 720 A.2d 275, 285 (D.C. 1998) (rejecting the notion that "punitive damages could not also be awarded in addition to attorneys' fees" and explaining that "we see no reason why a court may not award punitive damages" as a civil sanction for bad-faith litigation); *Weisman v. Middleton*, 390 A.2d 996, 999 (D.C. 1978) (rejecting the argument that "it was error for the trial court to allow the jury to consider attorney's fees . . . and punitive damages as proper elements of its damage award" on a malicious prosecution claim).[4]

---

[4] Davis also cites in passing our decision in *Town Center Management Corp. v. Chavez*, 373 A.2d 238 (D.C. 1977). That case stands for the proposition that a trial court may consider attorney's fees "as one factor in its final assessment

(continued…)

In defending the trial court's fee award, HRGM contends that punitive damages and contractual attorney's fees "serve wholly different purposes" in that punitive damages are designed to punish and deter whereas contractual attorney's fees are intended to compensate for the harm suffered. In support of this assertion, HRGM cites other state court decisions in which trial courts were permitted to award attorney's fees even though the jury had considered the expense of litigation in awarding punitive damages. *See Equitable Life Leasing Corp. v. Abbick*, 757 P.2d 304, 307 (Kan. 1988) (rejecting the argument that because "the jury was allowed to consider the expense of litigation under the punitive damages instruction," "the attorney fee award under the [Kansas Consumer Protection Act was] duplicative"); *Berry Prop. Mgmt., Inc. v. Bliskey*, 850 S.W.2d 644, 669 (Tex. App. 1993) (rejecting the contention that "because the court instructed the jury by its exemplary damage instruction . . . that it could consider attorneys' fees as part of the exemplary damage amount . . . the court awarded [the plaintiff] a double recovery of her attorneys' fees"); *see also Dist. Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 728 (D.C. 2003) (citing *Abbick*). Davis responds that *Abbick*, *Bliskey*, and other similar cases are distinguishable because they "arise under state consumer protection acts, securities acts, deceptive trade practices acts or civil

(…continued)
and imposition of punitive damages." *See id.* at 246.

rights acts," and that "[u]nder those statutes, legislatures allow for the recovery of attorneys' fees in addition to punitive and/or treble damages" for specific public policy reasons. But the rationales underlying *Abbick* and *Bliskey* do not appear so limited. In *Abbick*, the Kansas Supreme Court stated more broadly that "[t]he purpose of damage awards or attorney fees is to compensate, whereas the purpose of punitive damages is to deter and punish," 757 P.2d at 308, and in *Bliskey* the Texas Court of Appeals held that the fact that "the court's instruction about exemplary damages included a statement that the jury *could* consider the award of attorneys' fees when awarding exemplary damages[] does not necessarily lead to the conclusion that [the plaintiff] received a double recovery," 850 S.W.2d at 669. *Abbick* and *Bliskey* accordingly serve as persuasive authority on the question in this case given the dearth of controlling case law from this jurisdiction.

Here, the trial court, after deducting more than $70,000 from the amount requested, awarded HRGM attorney's fees under the provision in the Joint Venture Agreement specifying that "[e]ach Venturer shall indemnify and save harmless the other Venturer" from any expenses arising out of "any breach of the foregoing provisions" of the Agreement. This award under the indemnification clause was compensatory in nature, in contrast with the jury's award of punitive damages. Although the jury was instructed that it could consider attorney's fees incurred alongside other factors, its goal was to produce an award "sufficient to punish the

defendant for his or her conduct and to serve as an example to prevent others from acting in a similar way" rather than to make HRGM whole. Thus there was no double recovery although HRGM benefited from two separate monetary awards based on overlapping factors.

Given the absence of case law foreclosing an award of both punitive damages and contractual attorney's fees, and given our reluctance to disturb what both parties appeared to regard as an entitlement to fees under the Joint Venture Agreement,[5] we hold that the trial court did not err in awarding fees under the circumstances of this case. *See* Dobbs, *Law of Remedies* § 3.10 (3), at 402–03 (observing that "[c]ontracting parties [to indemnity and hold harmless agreements] often provide that one of the parties will protect the other from litigation costs or claims brought by third persons as well as from claims between themselves" and that "when [such a right] is established by contract, the contract controls, so that attorney fees are awarded under such contracts with no difficulty"); *see id.* § 3.11 (3), at 483 (observing that while "[t]he overlapping purposes of punitive damages and attorney fee awards in cases [like *St. Luke*] suggest that it may be proper in

---

[5] In the same Joint Pretrial Statement in which the parties agreed on the standard punitive damages instruction, Davis—like HRGM—requested "[a]ttorneys' fees to be sought from and awarded by the Court in a post-trial proceeding pursuant to Rule 54 (d)(2)." *See infra* Sections II.B.–II.C.

some cases to limit the amount of punitive damages when attorney fees are awarded," "there are no doubt cases in which it is proper to award both full punitive damages and full attorney fees").[6]

## B. Article XXI

Davis next argues that even if the trial court were permitted to award post-trial attorney's fees, the court erred in interpreting Article XXI of the Joint Venture Agreement to provide for such an award. Davis advances two primary arguments in support of this assertion. First, Davis contends that under Maryland law clauses like Article XXI authorize the recovery of attorney's fees only in litigation involving third parties, not in first-party actions between the contracting parties. Second, Davis argues that Article XXI triggers an indemnity obligation under only two conditions, neither of which was present here.

Under Maryland law,[7] the question whether an indemnification clause extends to attorney's fees in first-party actions "in addition to the standard allowance of attorney's fees in defense of suits by third parties" presents a matter

---

[6] For similar reasons, we reject Davis's argument that the trial court's fee award violated the Seventh Amendment, a claim for which Davis provides no support.

[7] Maryland law governs the Joint Venture Agreement.

of contract interpretation, which the court reviews de novo. *Nova Research, Inc. v. Penske Truck Leasing Co.*, 952 A.2d 275, 2884 (Md. 2008); *see also* Dobbs, *Law of Remedies*, § 3.10 (3), at 401 (noting that "the 'third parties' limitation is not accurate; in appropriate cases the plaintiff may also recover for expenses in litigation with the defendant himself"). "If a contract is unambiguous, the court must give effect to its plain meaning and not contemplate what the parties may have subjectively intended by certain terms at the time of formation." *Nova Research*, 952 A.2d at 283. In construing the contract, the court "look[s] to the entire language of the agreement, not merely a portion thereof," considering "the customary, ordinary and accepted meaning of the language used." *Id.* (quoting *Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 844 A.2d 460, 469 (Md. 2004)).

The Joint Venture Agreement provides indemnity "from and against any and all . . . costs and expenses (including but not limited to reasonable attorneys' fees) arising directly or indirectly, in whole or in part, out of any breach of the foregoing provisions." The trial court concluded that Article XXI "on its face . . . authorize[d] HRGM's request for fees and costs," and that "[r]eading the entire contract does not reveal any content inconsistent with this interpretation but, rather, supports it." In this regard, the court observed that the Joint Venture Agreement contains another indemnity provision, Article XVI, which covers third-party actions in requiring reimbursement for "any liability or . . . loss or losses directly

connected with the performance of the Construction Contract." Because Article XVI already extends to some third-party actions, the trial court declined to construe Article XXI as covering only those actions.

We agree with the trial court that the plain language of Article XXI provides for the recovery of attorney's fees in this first-party action between HRGM and Davis.[8] As an initial matter, and as the trial court noted, Article XXI contains an express reference to attorney's fees, authorizing a party to recover "any and all . . . costs and expenses (including but not limited to reasonable attorneys' fees)." This

---

[8] Even if Article XXI's language did not clearly establish that the clause provides for the recovery of attorney's fees in first-party actions, the contract language is at least ambiguous, and we may consider extrinsic evidence to discern the parties' intent. *See Nova Research*, 952 A.2d at 283 ("A contract is ambiguous if, when read by a reasonably prudent person, it is susceptible of more than one meaning."); *C B Structures, Inc. v. Potomac Elec. Power Co.*, 122 F. Supp. 3d 247, 252 (D. Md. 2015). The extrinsic evidence here provides a strong indication that both parties intended for Article XXI to cover fees in first-party actions. In their initial pleadings, both HRGM and Davis requested attorney's fees under the Agreement. In particular, Davis, in its counterclaim based on HRGM's alleged "failure or refusal to contribute necessary capital as required by the Joint Venture," asserted that "[i]n accordance with the express terms of the Agreement, Article XXI, HRGM must pay Davis all reasonable attorney's fees arising out of HRGM's breach of the Agreement." Both parties made similar representations in the "[r]elief [s]ought" section of the Joint Pretrial Statement, as they requested "[a]ttorneys' fees to be sought from and awarded by the Court in a post-trial proceeding pursuant to Rule 54 (d)(2)." In light of this extrinsic evidence, we are satisfied that our interpretation of the Joint Venture Agreement does not "infer[] duties that the parties did not intend to create." *Nova Research*, 952 A.2d at 287 (quoting Robert L. Rossi, *Attorneys' Fees* § 9:18 (3d ed. Supp. 2007)).

unmistakable fee-shifting provision with its any-and-all language goes on to delineate the provision's scope in similarly expansive terms. Under Article XXI, a party may recover such fees as long as the fees arise "directly or indirectly, in whole or in part, out of *any* breach of the foregoing provisions." (Emphasis added). This broad language, in particular the unqualified reference to "any breach," suggests that Article XXI's explicit fee-shifting provision cannot properly be construed as applying only to scenarios in which one of the parties engages in unauthorized acts when dealing with a third party. To the contrary, the Agreement's plain language makes clear that if a party has committed "any breach" of the "foregoing provisions," the non-breaching party may recover "any and all . . . attorneys' fees" arising out of that breach. As the trial court observed, the structure of the Joint Venture Agreement bolsters this conclusion. *See also Nova Research*, 952 A.2d at 283. The parties do not dispute that Article XVI's separate indemnity provision relating to "loss or losses directly connected with the *performance* of the Construction Contract" covers only claims involving third parties. Because Article XXI encompasses "any breach" of the relevant provisions rather than only losses directly connected with "performance" of the contract, it follows that Article XXI may be read more broadly than Article XVI to include within its scope first-party actions. If the parties had wanted Article XXI to cover only third-party actions consistent with Article XVI, presumably they would have

used language similar to that in Article XVI.[9]

Davis relies principally on *Nova Research* in arguing that Article XXI does not contain the "clear and express language" necessary to establish a right to recover attorney's fees in first-party actions. In *Nova Research*, the court set out to address the question "whether [a] contract provision for indemnification includes first party attorney's fees, where the contract language does not provide expressly for the recovery of attorney's fees." 952 A.2d at 278. The two indemnity clauses at issue in that case contained no mention of attorney's fees,[10] and yet the prevailing party had argued on appeal that the court as a general rule "should imply that [an indemnitee] is entitled to recovery of attorney's fees unless the indemnity contract provides otherwise." *Id.* at 281. The court rejected this argument, declining to imply a fee-shifting provision for first-party actions establishing a right to indemnity where the contract does not expressly include such a provision, as under this approach "the presumption of the American rule disallowing recovery of attorney's fees would, in effect, be gutted." *Id.* at 285. The court indicated that

---

[9]  That Article XVI relates to the Construction Contract and Article XXI to the Joint Venture Agreement does not change the inference to be drawn from the different language used in each provision.

[10]  Both clauses indemnified "from and against all loss, liability and expense" arising out of certain specified acts or omissions. *Nova Research*, 952 A.2d at 278.

the absence of the phrase "attorney's fees" was not dispositive, however, because in at least one other circumstance the court had upheld an award of fees in a first-party action under a clause that similarly did not contain an express reference to fees. *See id.* at 283–85. In that case, *Atlantic Contracting*, a first-party action to recover losses under a surety bond with an indemnity agreement, the agreement covered losses "sustained or incurred . . . in connection with or as a result of . . . the enforcement of this Agreement." *Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 844 A.2d 460, 469 (Md. 2004). The court upheld the award of attorney's fees in *Atlantic Contracting* because "[i]ndemnity agreements of this kind"—that is, in the surety context—"are interpreted generally to entitle the surety to recover fees, costs, and expenses incurred in enforcing them." *Id.* at 478. Because *Nova Research* involved a first-party action to establish the right to indemnity—rather than a first-party action to enforce the terms of the indemnity agreement—the court there declined to imply a fee-shifting provision without an express reference to the recovery of attorney's fees. 952 A.2d at 289.

Davis argues that HRGM cannot recover attorney's fees under Article XXI because the provision lacks the enforcement language that *Nova Research* purportedly requires. That argument misconstrues *Nova Research*. The court there noted only that an agreement indemnifying against loss in the enforcement of the agreement could provide a basis for recovering attorney's fees in a first-party

action even if the agreement does not contain the express phrase "attorney's fees." *Nova Research* had no occasion to address the question at issue here—under what circumstances a contract that *does* expressly make reference to attorney's fees authorizes the recovery of such fees in first-party actions. In light of this key difference, the absence of the word "enforcement" in Article XXI is not dispositive, and *Nova Research* does not bar the award of fees in the circumstances of this case.

Even accepting Davis's reading of *Nova Research*, however, the first-party action here is more akin to an action to enforce the terms of a contractual agreement like in *Atlantic* than an action to establish a right to indemnity as in *Nova Research*. HRGM's complaint alleges in part that Davis breached the Joint Venture Agreement by taking certain unauthorized actions, including "[d]emanding payment of amounts to the Joint Venture from HRGM without the required final audit" and maintaining inaccurate accounting records. Although it later withdrew the claim, HRGM also requested in its complaint an equitable accounting to compel Davis "to submit to a full and complete accounting for the handling and use of all sums received by the Joint Venture," an accounting that HRGM "ha[d] sought . . . over a period of numerous months" without success. In this regard, HRGM can be said to have brought an action to enforce the contract's terms through compelling Davis to fulfill its contractual obligations and remedy

any accounting defects. *See Enforce,* BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "enforce" as "to compel obedience to").[11]

Having concluded that Article XXI extends to first-party actions like this

---

[11] For this reason, Davis's citation to *Thomas v. Capital Medical Management Associates, LLC*, 985 A.2d 51, 70 (Md. Ct. Spec. App. 2009), actually supports our conclusion. In *Thomas*, the court held that although the indemnification section of the agreement at issue included the phrase "attorney's fees," it did not authorize the recovery of fees in first-party actions because the section covered fees arising out of the "performance of th[e] Agreement," a phrase the court construed as encompassing only third-party litigation. *Id.* at 69–70. At the same time, the court suggested that had the agreement expressly provided for the recovery of fees based on one party's "default or termination under the Agreement," such language would have sufficed under *Nova Research*. *Id.* at 70. The action here, based on Davis's breach of the Joint Venture Agreement, appears more similar to an action arising out of a "default . . . under the Agreement" than an action arising out of "performance of th[e] Agreement." *Compare Breach of Contract*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "breach of contract" in part as a "[v]iolation of a contractual obligation by failing to perform one's own promise"), *with Default, id.* (defining "default" as "to fail to perform a contractual obligation").

As for Davis's reliance on the Maryland federal district court's unpublished opinion in *Hearn Insulation & Improvement Co. v. Bonilla*, No. 09-CV-00990-AW, 2011 WL 220091, at *1 (D. Md. Jan. 21, 2011), that case is unpersuasive. The agreement there expressly provided for the recovery of fees "arising out of" or "relating to" a breach of contract. *Id.* at *2. In holding that the agreement extended only to third-party actions, the court concluded that "[t]his broad language covers, and appears designed to cover, actions by third parties against the Plaintiff based on the inadequate work of Plaintiff's contractors, *i.e.*, the Defendants." *Id.* But the court failed to explain why the phrases "arising out of" or "relating to" necessarily did not encompass first-party actions when the Court of Appeals of Maryland held in *Atlantic* that an agreement with the similar phrases "in connection with" or "as a result of"—and without an express reference to attorney's fees—*did* encompass first-party actions. *Atlantic*, 844 A.2d at 469, 478.

case, we turn to Davis's argument that HRGM failed to allege in its complaint or prove to the jury any "breach of the foregoing provisions" of Article XXI.[12] The first paragraph of Article XXI provides that "[n]o Venturer shall take any action on behalf of or in the name of the Joint Venture, or enter into any commitment or obligation binding upon the Joint Venture, except for actions expressly provided for in this Agreement or authorized by the Venturers in the manner set forth herein." Davis contends that "HRGM never alleged . . . any specific unauthorized act by Davis Construction taken in the name of the Joint Venture." In Davis's view, HRGM's claims arise exclusively from disputes between the parties over "cost allocations and profit distributions," and the conduct underlying these disputes falls beyond the scope of Article XXI.

We agree with the trial court that HRGM alleged, and the jury found, that Davis breached "the foregoing provisions" of Article XXI.[13] HRGM claimed

---

[12] The trial court determined that the phrase "foregoing provisions" referred only to "the other subparagraphs of [Article] XXI," not to the Joint Venture Agreement as a whole.

[13] Davis also argues that the trial court erred in awarding attorney's fees because the jury never made a specific finding that Davis breached one of "the foregoing provisions" of Article XXI. The jury found only that Davis breached the Joint Venture Agreement "as a whole." Davis cites no case overturning an award on this basis, however, and the question whether Article XXI applies to Davis's breaching conduct would seem to be a legal question for the court to resolve rather than a question for the jury.

among other things that Davis "[c]harg[ed] improper amounts to the Joint Venture," "[c]harged to the Joint Venture numerous costs already covered and paid for by Davis'[s] management fee or not allowed under the Agreement," "[d]emand[ed] payment of amounts to the Joint Venture from HRGM without the required final audit," and maintained inaccurate and incomplete accounting records. Article XXI prohibits the parties from "tak[ing] *any* action" not "expressly provided for in this Agreement or authorized by the Venturers," and improperly charging the Joint Venture, demanding that HRGM pay into the Joint Venture before the required final audit, and maintaining inaccurate accounting records are all actions that fall within the Article's scope. Moreover, such actions were taken by Davis "on behalf of" or "in the name of" the Joint Venture. Davis indicated in its counterclaim, for example, that HRGM owed the Joint Venture money because the "Joint Venture determined that the Joint Venture required additional capital contributions." When Davis demanded that HRGM pay $111,223 as a capital contribution without the required final audit, then, it took this action "on behalf of" or "in the name of" the Joint Venture—to ensure that the Joint Venture could, as Davis stated in its counterclaim, "meet its contractual obligations."

The same is true for Davis's accounting obligations. The Joint Venture Agreement expressly provides that Davis "shall assume the responsibility of

maintaining an accurate account of all job costs and records." When Davis maintained inaccurate and incomplete accounting records, it did so "on behalf of" or "in the name of" the Joint Venture in its capacity as the majority venturer in charge of accounting. We accordingly hold that HRGM alleged and proved to the jury that Davis breached "the foregoing provisions" of Article XXI.

### C. Attorney's Fees As an Element of Damages

Davis also contends that even if HRGM were entitled to attorney's fees under Article XXI, HRGM was required under Super. Ct. Civ. R. 54 (d)(2) to prove those fees to the jury as an element of damages rather than seek the fees in a post-trial motion. Davis accordingly argues that the trial court erred as a matter of law in granting HRGM's post-trial motion for attorney's fees.

Rule 54 (d)(2)(A) provides that "[c]laims for attorneys' fees and related nontaxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial." Super. Ct. Civ. R. 54 (d)(2)(A). The Advisory Committee Note to the federal rule cites fees "sought under the terms of a contract" as an example of attorney's fees that are "an element of damages to be proved at trial" rather than requested through a post-trial motion under Rule 54. Fed. R. Civ. P. 54 (d)(2) advisory committee's note to 1993 amendment. But this court found it "important

to note . . . that 'fees sought under the terms of a contract' are not always 'fees recoverable as an element of damages,' and thus do not always fall within the exception." *Calomiris v. Calomiris*, 3 A.3d 1186, 1193 (D.C. 2010). "For instance, where a contract provides that fees are to be awarded to the prevailing party, the fees will be collateral to the merits of the case and will not be an element of damages to be proved at trial." *Id.*

Davis argues that because HRGM sought attorney's fees under a contractual indemnification provision rather than a prevailing party provision, HRGM was required to submit the fees as an element of damages to be proved at trial. By granting HRGM's post-trial motion for fees, Davis contends, the trial court erred as a matter of law in "fail[ing] to comprehend the distinction made by [this court] between attorneys' fees claimed as a prevailing party and a claim for contractual indemnification." Davis relies mainly on our decision in *Calomiris* to support this claim. In *Calomiris*, the plaintiff brought a successful action to reform the operating agreement of a limited liability company that he and his siblings had formed. 3 A.3d at 1188–89. The plaintiff then requested reimbursement from the company for the attorney's fees and costs he incurred while litigating the reformation action, a request he made pursuant to an indemnity provision in the operating agreement that covered costs "arising out of or incidental to the Member's involvement in the management of the Company affairs." *Id.* at

1193. The company denied the plaintiff's request, and he brought a separate action to recover fees. *Id.* at 1189. The trial court dismissed this case, concluding that the plaintiff, as the prevailing party in the reformation action, could have filed a post-trial motion under Rule 54 in that case. *Id.* This court reversed. It observed that "[n]othing in the indemnification provision conditions recovery of attorneys' fees upon a member's status as a prevailing party in the litigation." *Id.* at 1193–94. Instead, recovery depended on "the member's claim being one which 'aris[es] out of or [is] incidental to the [m]ember's involvement in the management of the Company affairs.'" *Id.* at 1194 (alteration in original). The court therefore held that Rule 54 did not govern the plaintiff's request, and that the trial court erred in dismissing the claim for fees under that rule. *Id.*

The circumstances of this case are unlike those in *Calomiris*. As an initial matter, the indemnity provisions are materially different. In *Calomiris*, recovery depended only on whether the claim arose out of or was incidental to the member's involvement in managing company affairs, but here the parties' entitlement to fees depended upon establishing a "breach of the foregoing provisions"—the apparent basis for the trial court's conclusion that Article XXI operated as a prevailing party provision, "as one cannot determine who the prevailing party is [in a breach of contract action] until after the trial is over." *See* Dobbs, *Law of Remedies* § 3.10 (3), at 401 (recognizing that "courts allow the prevailing plaintiff to recover

attorney fees when an express or implied [agreement] between the parties so provides, and hence to recover under indemnity and hold harmless agreements").[14]

More fundamentally, the record shows that the parties here understood and intended that the trial court would award attorney's fees and costs in a post-trial proceeding under Rule 54 (d)(2). Both HRGM and Davis alleged a breach of the Joint Venture Agreement, both parties sought attorney's fees for the alleged breaches under the indemnity provision in Article XXI, and both parties represented in their Joint Pretrial Statement, which the trial court later incorporated into its Pretrial Order, that the attorney's fees were "to be sought from and awarded by the Court in a post-trial proceeding pursuant to Rule 54 (d)(2)." *See* Order Granting Plaintiff's Motion for Attorneys' Fees and Scheduling Additional Submittals on Issue of Costs at 13 (Aug. 7, 2014) (acknowledging that "[b]oth parties proceeded on the basis that the winner would have fees and costs indemnified by the loser" and citing HRGM's complaint, Davis's counterclaim, and the Joint Pretrial Statement). It was only after the jury returned a verdict for

---

[14] *But see AMEC Civil LLC v. Mitsubishi Int'l Corp.*, 940 A.2d 131, 136 (D.C. 2007) (declining under Virginia law to construe a provision indemnifying against "Seller's refusal or failure to perform or observe any of Seller's agreements" as a prevailing party provision because "it does not condition a fee award on an antecedent judgment, but at most on a prior finding that [the Seller] refused or failed to comply with the contract requirements").

HRGM that Davis changed its position and contended that any attorney's fees awarded under Article XXI were an element of damages that should have been proved at trial.[15] Under these circumstances, the trial court committed no reversible error in granting HRGM's motion for post-trial attorney's fees under Rule 54 (d)(2).

### D. Reasonableness of the Fee Award

In its final argument, Davis contends that the trial court abused its discretion

---

[15] Many of the cases on which Davis relies are inapposite in this regard. *See, e.g.*, *Lifespan Corp. v. New England Med. Ctr., Inc.*, No. 06-CV-421-JNL, 2011 WL 3841085, at *6 (D.R.I. Aug. 26, 2011) (noting that "while [the] pleadings [of the party seeking post-trial fees] did request that this court award 'costs and expenses in this Action, including attorneys' fees,' [that party] never specifically notified [the other party]—in its pleadings or other prejudgment filings—that it intended to seek fees and expenses under the indemnification provision," and concluding that the "postjudgment claim for indemnification of fees and expenses, in addition to being an inefficient use of the judicial process, came as an unfair surprise to [the other party]" and should be denied); *Fed. Agric. Mortg. Corp. v. It's A Jungle Out There, Inc.*, No. C 03-3721 BZ, 2006 WL 1305212, at *2 & n.3 (N.D. Cal. May 9, 2006) (holding that the plaintiff's attorney's fees were an element of damages "and should have been resolved by the jury" in part because the plaintiff indicated in the joint pretrial statement that it "claims attorneys' fees as an item of compensatory damages in this case . . . . which flow directly and proximately from Defendants' breaches and wrongful conduct and will be presented as evidence during the Plaintiff's case in chief"); *see also Phillips v. Grendahl*, No. CIV. 00-1382 ADM/AJB, 2001 WL 1110370, at *2 (D. Minn. Sept. 19, 2001) ("The supporting memorandum does not identify the procedural basis authorizing the award of fees. No statute or rule is cited as authority for the award of fees.").

in awarding HRGM $736,152.76 in attorney's fees after trial, an award many times greater than HRGM's compensatory and punitive damages awards.[16]  *See Campbell-Crane & Assocs., Inc. v. Stamenkovic*, 44 A.3d 924, 947 (D.C. 2012) (reviewing the trial court's fee award for abuse of discretion).  Mindful of our deferential standard of review, we hold that the trial court did not abuse its discretion, and affirm the judgment below.

"In most situations, a reasonable fee is computed by first determining the so-called lodestar—the number of hours reasonably expended by counsel multiplied by a reasonable hourly rate—and then, 'in exceptional cases,' making upward or downward adjustments as appropriate." *Fed. Mktg. Co. v. Va. Impression Prods. Co.*, 823 A.2d 513, 530 (D.C. 2003) (quoting *Hampton Courts Tenants Ass'n v. District of Columbia Rental Hous. Comm'n*, 599 A.2d 1113, 1115 (D.C. 1991)). Trial courts make such adjustments by considering a list of twelve factors that this court and many others have adopted.  *See Frazier v. Franklin Inv. Co.*, 468 A.2d 1338, 1341 & n.2 (D.C. 1983) (listing the factors).  "Not all of these potentially

---

[16]  In a three-sentence footnote with no supporting authority, Davis appears to challenge the trial court's separate award of $39,344.67 in costs as "not allowable under Superior Court Rule of Civil Procedure 54-I."  We do not address this argument.  *See McFarland v. George Washington Univ.*, 935 A.2d 337, 351 (D.C. 2007) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (quoting *Wagner v. Georgetown Univ. Med. Ctr.*, 768 A.2d 546, 554 n.9 (D.C. 2001))).

relevant factors are pertinent in every case, however, and most are subsumed within the basic criterion that the time expended and the rate charged be reasonable." *Fed. Mktg. Co.*, 823 A.2d at 530.

The trial court here began its analysis by determining the lodestar, multiplying the hourly rates of HRGM's attorneys by the number of hours they worked on this case—a calculation that yielded a sum of $899,511.25. The court then reviewed each of the twelve factors, and ultimately made two downward adjustments to the lodestar. First, the court deducted $28,431.80 in "fees and costs [incurred] during the pre-litigation period." *See Frazier*, 468 A.2d at 1341 n.2 (listing "the time and labor required" as a factor to be considered). Second, the court deducted 15 percent of the lodestar—or $134,926.69—"in recognition of the difference between the amount at issue at trial and the results HRGM obtained." *See id.* (listing "the amount involved and the results obtained" as a factor to be considered). Davis takes issue primarily with the second deduction, pointing out that the trial court awarded HRGM $736,152.76 in attorney's fees even though the jury awarded only $5,056 in compensatory damages and $70,500 in punitive damages. Davis therefore argues that the trial court abused its discretion by failing to adequately consider HRGM's limited degree of success, which fell "somewhere in the range of 0.7% to 2.35% of the damages it sought." *See Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (explaining in the context of civil rights litigation under

42 U.S.C. § 1988 that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983))).

In evaluating the extent of HRGM's success in this case,[17] the trial court repeatedly acknowledged that HRGM "recovered a fairly small fraction of the compensatory damages it sought," and that "the jury disappointed HRGM's monetary expectations." But the court rejected using the damages award as the sole benchmark of HRGM's success, observing that "there is little or no indication in the record that HRGM's case was primarily about money." In an analysis that spans several pages of its order, the court explained that instead "this case has always been about Davis's failure to render an accounting," as "HRGM has asserted from the beginning of the case that Davis had a contractual and fiduciary

---

[17] For purposes of comparing the amount HRGM sought with the results obtained, the trial court used the amount HRGM requested from the jury— "$660,339 in compensatory damages and an unspecified award of punitive damages." The trial court explained at length the basis for this decision. It rejected using the complaint's demand for $2.5 million in compensatory damages and $3 million in punitive damages, as the amount requested in a complaint's *ad damnum* clause "is stated at the earliest stage of litigation and is often protectively inflated to avoid problems if the jury's verdict should be unexpectedly large." The court also decided against using the figures from the Joint Pretrial Statement because those numbers "were likely to be influenced by negotiation positions as opposed to accurate statements of the case's value." For these reasons, the court determined that "the most reasonable statement of damages to select . . . is the amount sought from the jury at the start of trial." We discern no error.

duty to perform an accounting and refused to do so," that "this failure to perform an accounting enabled Davis to declare with impunity that the [J]oint [V]enture had lost more than $550,000 and HRGM owed $111,223 as its share of the losses," and that "Davis's assertions were false."[18]  As the trial court noted, "HRGM prevailed on each one of these positions at trial"—"the jury vindicated [HRGM's] arguments that it was an innocent party and that Davis acted with willful disregard (or worse) of HRGM's rights; and that, far from HRGM owing Davis money, the opposite was true."  HRGM "also prevailed on its argument to the court that the JVA authorized [HRGM] to recover attorneys' fees and costs arising out of Davis's breach of that agreement."

"In summary," the trial court concluded, "HRGM achieved 100% of its business reputation objectives, 20% of its damages objectives, and acceptance of its argument that the JVA authorized indemnification for reasonable attorneys' fees and costs."  This "successful outcome . . . does not justify a dramatic reduction in attorneys' fees."  Because it was "not a complete success," however, the court

---

[18]  Davis suggests that the fact that HRGM withdrew its claim for an accounting shows that this case was not about a failure to render an accounting. HRGM ultimately decided against pursuing an accounting as an equitable remedy after the trial court indicated that it would be "fatally inconsistent . . . with the jury finding damages."  Davis's failure to render an accounting remained central, however, to HRGM's claims for breach of contract and breach of fiduciary duty— on which the jury found in HRGM's favor.

"deduct[ed] 15% from the lodestar in recognition of the significantly inflated financial value HRGM placed on the compensatory damages portion of the case."

In light of this analysis, we cannot say that the trial court abused its discretion by failing to adequately consider the degree of success HRGM obtained. *See Campbell-Crane & Assocs.*, 44 A.3d at 947 (noting that our review of fee awards is "limited" and that "it requires a very strong showing of abuse of discretion to set aside the decision of the trial court" (quoting *Watkins v. District of Columbia*, 944 A.2d 1077 (D.C. 2008))). After presiding over the pretrial conference, the two-week trial, and the extensive posttrial proceedings, the court engaged in a thorough fee inquiry that considered all aspects of the case,[19] including HRGM's substantial nonmonetary success as compared to its more limited damages award. *See Lively v. Flexible Packaging Ass'n*, 930 A.2d 984, 993 (D.C. 2007), *as amended* (Aug. 30, 2007) ("Where, as here, the judge addressing the fee petition is the same judge who conducted the pre-trial conference and presided over the trial of the case, substantial deference is owed on the issue of relative success of the litigation . . . ."). The court as part of this inquiry explained that it would reduce the lodestar because the case was not a total

_____

[19] The court noted in particular the parties' aggressive litigation efforts, which "indicate[d] that both parties were willing to take this potentially expensive course rather than settle on what they must have regarded as unfavorable terms."

victory for HRGM. *See Hensley*, 461 U.S. at 437 (noting that the trial court "should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained"). Such an approach was appropriately "tied to the overall degree of success . . . [rather than] a mere mathematical" calculation. *See Fred A. Smith Mgmt. Co. v. Cerpe*, 957 A.2d 907, 919 (D.C. 2008). Under these circumstances, we discern no abuse of discretion. *See id.* at 918 (explaining that "where 'a plaintiff has achieved only partial or limited success,' the judge may adjust the fee to reflect the level of success, and in that regard should consider . . . whether 'the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award'" (quoting *Lively*, 930 A.2d at 992, and *Hensley*, 461 U.S. at 434)).

## III. Conclusion

Having identified no reversible error, we affirm the judgment of the Superior Court.

*So ordered.*