*Bainbridge St. Elmo Bethesda Apartments, LLC v. White Flint Express Realty Group Limited Partnership, LLLP*, No. 30, September Term, 2016, Opinion by Raker, J.

**CONTRACT LAW – INDEMNIFICATION – FIRST-PARTY FEE SHIFTING:** Maryland follows the common law American Rule, which states that, generally, a prevailing party is not awarded attorney's fees. Maryland law draws a distinction between the recovery of attorney's fees incurred in defending against a third-party claim and those expended in prosecuting a claim against the indemnitor.

There are four exceptions to the American Rule where a prevailing party may be awarded attorney's fees, including that the parties have an agreement to that effect. The scope of indemnification is a matter of contract interpretation, where a court looks to the terms of the contract to decide whether the parties agreed expressly that attorney's fees would be recoverable in a first-party action.

The contract between the parties in this case, specifically Article 19, provides expressly for the payment of "attorney's fees;" and it ties payment of those fees expressly to an action for "breach" of the contract. Therefore, the Easement Agreement contains sufficient language to authorize first-party fee shifting, and subsequently White Flint is entitled to recover attorney's fees.

Circuit Court for Montgomery County
Case No. 362334-V

Argued: December 6, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 30

September Term, 2016

_____

BAINBRIDGE ST. ELMO BETHESDA
APARTMENTS, LLC

v.

WHITE FLINT EXPRESS REALTY GROUP
LIMITED PARTNERSHIP, LLLP

_____

Barbera, C.J.
Greene
Adkins
McDonald
Hotten
Getty
Raker, Irma S. (Senior Judge,
Specially Assigned),

JJ.

_____

Opinion by Raker, J.

_____

Filed: July 18, 2017

This dispute concerns the award of attorney's fees in a construction contract dispute. At the heart of this appeal is whether White Flint Express Realty Group Limited Partnership, LLLP ("White Flint"), respondent, was entitled to recover attorney's fees expended in connection with an action to enforce the contract between White Flint and Bainbridge St. Elmo Bethesda Apartments, LLC ("Bainbridge"), petitioner. The Court of Special Appeals held that the contract provided expressly for attorney's fees to be recovered in a first-party indemnification action. *Bainbridge St. Elmo Bethesda Apartments, LLC v. White Flint Express Realty Grp. Ltd. P'ship, LLLP*, No. 0376 SEPT. TERM 2014, 2016 WL 1321205, at \*6 (Md. Ct. Spec. App. Apr. 5, 2016), *cert. granted sub nom. Bainbridge St. Elmo Bethesda v. White Flint Express Realty Grp. Ltd. P'ship*, *LLLP*, 449 Md. 408, 144 A.3d 704 (2016). We granted Bainbridge's petition for writ of certiorari to address the following question:

> "Did the CSA undermine the clarity provided by this Court in *Nova Research*[,] [*Inc.*] *v. Penske Truck Leasing Co.*, 405 Md. 435 (2008), concerning the limited circumstances under which a contractual indemnity provision can be read as a first-party fee shifting provision overriding the American Rule that each party bears its own attorneys' fees?"

Petition for Writ of Cert., *Bainbridge St. Elmo Bethesda Apartments, LLC v. White Flint Express Realty Grp. Ltd. P'ship, LLLP*, No. 162. We shall affirm the judgment of the Court of Special Appeals, and hold that the contract contains express provisions authorizing first-party fee shifting, entitling White Flint to attorney's fees.

I.

Bainbridge, an entity formed by the Bainbridge Companies to manage the construction and operation of a new 17-story high rise apartment building in Bethesda, owns the property immediately adjacent to 4904 and 4909 Fairmont Avenue ("the Fairmont Properties"). Located on the Fairmont Properties were two one-story concrete buildings owned by White Flint that were leased to a restaurant and a children's dance studio. Bainbridge engaged sub-contractor Turner to build the 17-story apartment building on its property for an estimated cost of $45,000,000. The construction project required excavation of a 50-foot-deep hole on the property, to be held open by steel cables protruding under and onto White Flint's property[1] to prevent soil and sub-surface structures from moving toward or into the excavation area. Bainbridge sought an easement from White Flint for access to the space "under, over, across and on the Fairmont Properties." Bainbridge also wanted additional easements to swing a crane and extend scaffolding above the Fairmont properties.

On September 7, 2011, after several months of negotiation, and before construction began, Bainbridge and White Flint entered into a "Crane Swing, Tie Back and Swing Scaffold Easement Agreement" ("the Agreement"). Bainbridge agreed to pay White Flint $425,000 as consideration for the Agreement and the requested easements.

---

[1] Bainbridge proposed to hold open the hole with a "sheeting and shoring system" built by placing vertical steel I-beams ("piles") into pre-drilled holes, locked into place by "tie-backs"—long steel cables extending back from the piles into adjacent properties and welded to "brackets"—with L-shaped steel shelves extending onto and underneath the neighboring building foundations.

The Agreement recognized Bainbridge's right to access the air space above and the ground below White Flint's Property, and it provided White Flint a means to seek redress for any potential damage from the construction. Under Article 3, Bainbridge promised that it would not use a "pile-drive" system to secure the hole, and would follow the appended plan's use of tie-backs and bracket piles placed into pre-drilled holes. Article 7 provided that Bainbridge would ensure that all excavation and foundation work conformed to applicable professional standards of care while minimizing the inconvenience to White Flint, would protect all individuals in and around the properties, and would not undermine the improvements on the Fairmont Properties. In Article 9 of the Agreement, Bainbridge agreed to permit White Flint to engage, at Bainbridge's expense, consultants:

> "[T]o monitor performance of the work by Bainbridge, and identify any perceived deficiencies that could result in injury to people occupying or visiting any part of the White Flint Property, or in damage to the White Flint Property."

If White Flint's consultants identified a Major Deficiency (over $25,000), Bainbridge had the right to have its own consultant "review and assess the perceived Major Deficiency." Article 9 provided that if Bainbridge's consultants did not agree with White Flint's consultants as to a perceived Major Deficiency, the parties were obligated to "work together in good faith to find a mutually acceptable resolution." And then if a resolution could not be reached within 60 days, the dispute would be submitted to binding arbitration. Finally, Article 9 included a fee-shifting agreement specifying that:

> "The prevailing party in any arbitration shall be awarded reasonable counsel fees, expert and non-expert witness costs and expenses and all other costs and costs and expenses reasonably incurred, directly or indirectly, in connection with

–3–

said arbitration, and all costs and frees of such arbitration shall be borne exclusively by the non-prevailing party."

Article 16 established Bainbridge's responsibility to either repair and restore White Flint's property to its original condition or reimburse White Flint for doing so. Article 17(a)-(b) provided that Bainbridge would pay White Flint $425,000 upon entering into the Agreement, and established an escrow account to reimburse White Flint for costs associated with negotiating and monitoring Bainbridge's compliance with the Agreement.

Most relevant to the present appeal is Article 19, the indemnification clause of the contract, which provided as follows:

> "*Indemnity.* Bainbridge hereby indemnifies, and agrees to defend and hold harmless White Flint . . . from any and all claims, demands, debts, actions, causes of action, suits, obligations, losses, costs, expenses, fees, and liabilities (including reasonable attorney's fees, disbursements, and litigation costs) arising from or in connection with Bainbridge's breach of any terms of this Agreement or injuries to persons or property resulting from the Work, or the activities of Bainbridge or its employees, agents, contractors, or affiliates conducted on or about the White Flint Property, including without limitation, for any rent loss directly attributable to any damage to the White Flint Property caused by the construction of the Project, however Bainbridge shall not be liable for matters resulting from the negligence or intentional misconduct of White Flint, its agents, employees, or contractors. The indemnification obligations set forth herein shall survive the termination of this Agreement indefinitely."

During the Project's excavation stage, White Flint's experts detected damage to White Flint's Property, alerted Bainbridge to the damage, and asked for assurances that the damage would be remedied. White Flint claimed that Bainbridge and its contractors did not drill the holes properly for the steel beams, resulting in soil loss beneath the Fairmont

–4–

Properties, and that pile-drivers were used instead of drills to install the steel beams, in contravention of the express language of the Agreement. White Flint complained that the use of the pile-driver caused the buildings to shake, causing additional damage and soil movement underneath the buildings. By February 2012, the owner of the children's dance studio on White Flint's property reported seeing numerous cracks in the walls, that she feared a roof collapse on her students, and that many parents would not bring their children to class until she received assurances by Montgomery County that the building was safe.

Turner, Bainbridge's general contractor for the Project, stopped the excavation and braced White Flint's buildings to prevent further damage. Bainbridge hired a structural engineer, Allyn Kilsheimer, who on February 27, 2012, advised that Turner should "[p]erform no additional construction work within 20 horizontal feet" of the White Flint Property, other than work necessary to stabilize the site. He recommended evacuation of the White Flint building and that it remain unoccupied for precautionary purposes until the completion of the investigation. Because of building movement and damage, on March 7, 2012, Montgomery County stopped all but safety work on the project.

In response to Mr. Kilsheimer's recommendation, White Flint determined that Bainbridge was in breach of Article 7 of the Agreement, terminating the Agreement for material breach. White Flint alleged that Bainbridge had known beforehand that White Flint should expect damages to its property because the sheeting and shoring system was designed to move. Further, White Flint alleged that Bainbridge's work did not conform to the plans and specifications because it used pile drivers instead of drills to install the steel beams.

Bainbridge, in a letter to White Flint, represented that it had "observed and honored each of its obligations" and that White Flint's termination of the contract was itself a material breach. Bainbridge invited White Flint to engage in a confidential settlement discussion on repairing the properties and making White Flint whole. White Flint declined to participate, and in response, Bainbridge disclaimed any further ongoing contractual duties to White Flint, including its duties to repair the property and indemnify White Flint under Article 19.

On April 24, 2012, White Flint filed a complaint for declaratory relief claiming that Articles 16, 17, and 19 survived the contract's termination and that Bainbridge was bound to comply with those obligations. The Project's primary insurer, Liberty Mutual, made an interim payment of $191,005 to White Flint for the losses it had quantified to that date, including the lost rent projected through February 2013 ($149, 685), third-party legal fees ($23,008), and parking charges ($18,312).

On September 18, 2012, Bainbridge submitted a settlement proposal to White Flint, which rejected the proposal, arguing that Bainbridge offered only a small cash sum and the prospect that Bainbridge's insurer would address White Flint's claim at an uncertain date in the future. Following its rejection of the settlement proposal, White Flint filed its first of six amended complaints[2] to add breach of contract and tort claims and added Turner and

---

[2] The amended complaints included allegations of fraud, nuisance, trespass, negligent misrepresentation, strict liability for abnormally dangerous activity, and claims for compensatory relief and punitive damages.

Schnabel Foundation Company ("Schnabel"), Turner's sheeting and shoring subcontractor, as defendants.

On November 25, 2013, the Circuit Court for Montgomery County granted White Flint partial summary judgment on most claims and entered a declaratory judgment finding: that Bainbridge's obligations survived the termination, that Bainbridge materially breached the agreement, and that Bainbridge had continuing duties to White Flint. And, significantly, the circuit court found that under Article 19 of the Agreement, White Flint was entitled to attorney's fees. Concerning the award of attorney's fees, the circuit court reasoned that *Nova Research, Inc. v. Penske Truck Leasing Co.*, 405 Md. 435, 935 A.2d 275 (2008), did not require an indemnity provision to "say enforce first party claims. . ." to authorize first-party fee shifting. The circuit court examined Article 19 and concluded that White Flint was entitled to recover attorney's fees because the "language and structure" of Article 19 authorized first-party fee indemnity.[3]

After the circuit court's partial summary judgment order, four issues remained for trial: (1) negligent misrepresentation and fraud, (2) compensatory damages, (3) punitive damages, and (4) the amount of attorney's fees and expenses. The parties settled the issues

---

[3] Specifically, the circuit court explained as follows:

> "As I read this clause, in my view, given the *language and structure* of the clause and what it covers specifically in terms of damages, some of them, not all of them, are only first party damages. It would make no sense to me, to – in a contract in the same provision to say, we're going to give your first party type damages, but this clause doesn't apply."

–7–

of liability and damages, reserving the award of attorney's fees and expenses.[4] The circuit court held a hearing on the fee petition, and on April 7, 2014, the court awarded White Flint $3,520,256.59 in attorney's fees, and $411,391.88 in costs and expenses, for a total of $3,931,648.47.

Bainbridge appealed the fee award. The Court of Special Appeals, in an unreported opinion, affirmed. *Bainbridge*, 2016 WL 1321205, at *6. The Court of Special Appeals concluded that *Nova Research's* rejection of first-party fee shifting was not controlling, based on two primary grounds: (1) that "unlike *Nova Research*, the contract litigation in the present case was for enforcement of the agreement, not the determination of a right to indemnity," and (2) that the inclusion of the words "attorney's fees" in Article 19, together with a reference to damages "arising out of . . . breach" constituted an express provision authorizing first-party fee shifting as required by *Nova Research*. *Id.* at *6-7.

We granted Bainbridge's petition for writ of certiorari, appealing solely the issue of whether the Agreement entitled White Flint to recover first-party attorney's fees. *Bainbridge*, 449 Md. at 408, 144 A.3d at 704.

II.

Before this Court, Bainbridge argues that Article 19, the indemnity clause of the Agreement, does not authorize an award of attorney's fees in first-party actions and

---

[4] The settlement reached by the parties on the pending claims for the damage to White Flint's Property was $3.2 million in addition to the prior payment of $191,005 made by Liberty Mutual.

supports an award of attorney's fees only for third-party actions. Relying on *Nova Research* for the proposition that an indemnity provision such as Article 19 must unmistakably and specifically authorize a first-party attorney's fee award in the context of the contract as a whole, Bainbridge maintains that the language of Article 19 addresses third-party claims against which Bainbridge is to "defend" and to "hold harmless," negating any suggestion that Article 19 was intended to indemnify White Flint for fees in a first-party action for any breach of the Agreement. In support of this argument, Bainbridge looks to Article 9, in which the parties expressly and unmistakably agreed to resolve first-party disputes, and included a "prevailing party" fee-shifting clause. Concluding, Bainbridge states that Article 9's express first-party fee-shifting provision is incompatible with the interpretation that Article 19 can be read to indemnify White Flint for first-party fees in litigation over construction-related damage.

White Flint, on the other hand, argues that Article 19's clear language and structure, along with the business context in which the Agreement was reached, support the trial court and intermediate appellate court's holdings that an award of attorney's fees was proper under that clause. Bainbridge breached the Agreement, severely damaging White Flint's property, forcing White Flint to incur substantial attorney's fees, disbursements and costs, and the need to file a claim for the breach of contract. White Flint maintains that "the express indemnity in Section 19 of the parties' Crane Swing, Tie Back and Swing Scaffold Easement Agreement . . . clearly and unambiguously requires Petitioner Bainbridge St. Elmo Bethesda Apartments, LLC . . . to reimburse Respondent White Flint Express Realty Group Limited Partnership LLLP . . . for the attorney's fees [first-party claim] caused by

–9–

Bainbridge's breaches of contract." Resp. Br. at 2. White Flint points to Article 19's language that states explicitly that White Flint may recover "any and all . . . losses, costs, expenses, fees, and liabilities (including *attorney's fees*, disbursements, and litigation costs) arising from or in connection with Bainbridge's breach of any terms of this agreement." *Id.* In sum, White Flint maintains that the very purpose of the Agreement was to ensure that White Flint would be made whole if Bainbridge breached and injured White Flint, and that would include attorney's fees (under the indemnity clause) incurred to enforce the contract.

III.

The issue at the heart of this case is the interpretation of the contractual agreement between petitioner and respondent as to the entitlement of attorney's fees in this action. The interpretation of a written contract is a question of law, which we review *de novo*. *Atlantic Contracting & Material Co., Inc. v. Ulico Cas. Co.,* 380 Md. 285, 300-01, 844 A.2d 468-69 (2004). We apply the objective interpretation of contracts. *Id.* at 301, 844 A.2d at 469. In interpreting the meaning of a contract, we consider "the customary, ordinary, and accepted meaning of the language used." *Id.* (citation omitted). We interpret the language of the contract in context, looking at "the entire language of the agreement, not merely a portion thereof." *Jones v. Hubbard,* 356 Md. 513, 534, 740 A.2d 1004, 1016 (1999).

Maryland follows the common law American Rule, which states that, generally, a prevailing party is not awarded attorney's fees. *Nova Research,* 405 Md. at 445, 952 A.2d

at 281. *See also* 11 CORBIN, CONTRACTS § 57.9 (2005) (stating that "[u]nder the prevailing American rule, legal fees in an action against the breaching party cannot be recovered."). Under the American Rule there is a fundamental distinction "between the recovery of attorney's fees incurred in defending against [a] third-party claim and those expended in prosecuting a claim against the indemnitor." *Nova Research*, 405 Md. at 453, 952 A.2d at 283 (quoting PHILIP L. BRUNER & PATRICK J. O'CONNOR, JR., 3 CONSTRUCTION LAW § 10:51 (2007)). In *Peter Fabrics, Inc. v. S.S. Hermes*, 765 F.2d 306 (2d Cir. 1985), the United States Court of Appeals for the Second Circuit articulated clearly the reason for the distinction between attorney's fees in third-party actions versus first-party actions, explaining as follows:

> "Indemnity obligations, whether imposed by contract or by law, require the indemnitor to hold the indemnitee harmless from costs in connection with a particular class of claims. Legal fees and expenses incurred in defending an indemnified claim are one such cost and thus fall squarely within the obligation to indemnify. Consequently, attorney's fees incurred in defending against liability claims are included as part of an indemnity obligation implied by law, . . . and reimbursement of such fees is presumed to have been the intent of the draftsman unless the agreement explicitly says otherwise . . . . Such reasoning does not apply to fees and expenses incurred in establishing the existence of an obligation to indemnify, since such expenses are not by their nature a part of the claim indemnified against. Rather, they are costs incurred in suing for a breach of contract, to wit, the failure to indemnify. As such, fees and expenses incurred in establishing the indemnity obligation fall within the ordinary rule requiring a party to bear his own expenses of litigation, *see* Berger, *Court Awarded Attorneys' Fees: What is "Reasonable"?*, 126 U.Pa.L.Rev. 281, 281 (1977). *Cf.* 5 Corbin, Contracts § 1037 (1964) (attorneys' fees and expenses may be recovered if they constitute damages from the breach of a contract but not if they are incurred in proving the breach)."

–11–

*Id.* at 316 (some internal citations omitted).

There are four exceptions to the American Rule where a prevailing party may be awarded attorney's fees: "(1) the parties to a contract have an agreement to that effect, (2) there is a statute that allows the imposition of such fees, (3) the wrongful conduct of a defendant forces a plaintiff into litigation with a third party, or (4) a plaintiff is forced to defend against a malicious prosecution." *Nova Research,* 405 Md. at 445, 952 A.2d at 281 (quoting *Thomas v. Gladstone*, 386 Md. 693, 699, 874 A.2d 434, 437 (2005)).

The present certiorari question is predicated upon this Court's opinion in *Nova Research* and its discussion on the first exception to the American Rule, *i.e.,* the parties have a contractual agreement to shift attorney's fees. In *Nova Research*, we considered the question of whether the parties' contract provision for indemnification included first-party attorney's fees, where the contract language did not provide expressly for the recovery of attorney's fees. We held that the attorney's fees expended by Penske in establishing the right to indemnification were not recoverable. *Nova Research,* 405 Md. at 458, 952 A.2d at 289. We explained that the question of whether first-party attorney's fees are covered under the contract is determined by basic contract interpretation principles in order to determine the scope of the indemnification provision and whether the clause covers first-party enforcement rights. *Id.* at 449, 952 A.2d at 284. We noted as follows:

> "The scope of indemnification is a matter of contract interpretation, and as such may or may not include attorneys' fees in first party enforcement actions, in addition to the standard allowance of attorney's fees in defense of suits by third parties. This concept is expressed in DAN B. DOBBS, LAW OF REMEDIES § 3:10(3) n.5 (2d Ed. 1993), which

–12–

states that '[w]hether the contract covers only fee costs incurred in third party litigation or also covers fee costs incurred in litigation between the parties themselves is of course a question to be answered by interpretation of the contract.'"

*Id*. *See also* HOWARD O. HUNTER, MODERN LAW OF CONTRACTS § 18.3 (March 2017) (stating that whether a party is entitled by contract to recover attorney's fees in enforcing the fee-shifting provision is a matter of contract interpretation).

While *Nova Research* leads courts to look at the terms of the contract to decide whether the parties agreed expressly that attorney's fees would be recoverable in a first-party action, we nonetheless made clear that as such an agreement invokes an exception to the American Rule, under which parties ordinarily bear their own counsel fees, the agreement must be based upon express terms and cannot be found by implication or inference. *Nova Research,* 405 Md. at 451, 952 A.2d at 289.[5] In other words, in order to preserve the distinction between third and first party claims, the underlying purpose behind the American Rule, attorney's fees provisions "must be strictly construed to avoid inferring duties that the parties did not intend to create. . . ." ROBERT L. ROSSI, ATTORNEYS' FEES § 9:18 (3d. Ed. 2002, Cum. Supp. 2007).

In interpreting the contract in *Nova Research*, we held that, under the parties' contract, extending the exception urged upon by Penske to imply a fee-shifting provision

---

[5] *See also* ROBERT L. ROSSI, ATTORNEYS' FEES § 9.20 (3d ed. 2002, Cum. Supp. 2017) (stating that "the majority of courts have held that the indemnity agreement must, in specific terms, express the intent of an indemnitor to indemnify the indemnitee for attorneys' fees and costs expended in defending an action alleging the indemnitee's own negligence in order for the indemnitor to be liable for such expenses.").

–13–

for first-party actions, where the contract does not permit one expressly, would be overbroad and permit the exception to swallow the rule, gutting the presumption of the American rule disallowing recovery of first-party attorney's fees. *Nova Research,* 405 Md. at 450-57, 952 A.2d at 284-89. In contrast, as the Court of Special Appeals noted, in this case, considering the contract as a whole, and the underlying purpose of the parties' contract, Article 19 of the Agreement "contains the type of express first party attorneys' fees language that the commercial vehicle lease contract in *Nova Research* lacked." *Bainbridge*, 2016 WL 1321205 at *6.

Unlike *Nova Research,* the Agreement before this Court contains several express provisions providing for first-party counsel fees. As we explained in *Nova Research*:

> "Although some courts have interpreted a contract provision to include first party attorney's fees incurred in enforcement actions, the vast majority of the contracts involved in those cases explicitly allowed for the recovery of attorney's fees by express inclusion of the phrase "attorney's fees" in the respective indemnity provisions."

405 Md. at 457, 952 A.2d at 288. Article 19 provides expressly for the payment of "attorney's fees;" it ties payment of those fees expressly to an action for "breach" of the contract; and it confirms the intent of the parties to cover first-party counsel fees by referring to "rent loss," a first-party loss arising from a breach of the Agreement. The Court of Special Appeals did not undermine or fail to apply the precepts of *Nova Research*. Instead, that Court found correctly that the Agreement, which was negotiated by sophisticated business entities, contained express terms that the contract at issue in *Nova Research* lacked. *See Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73

–14–

F.3d 150, 153 (7th Cir. 1996) (finding that a contract with an indemnification agreement that required appellee to "hold [[appellant] and its affiliates] harmless . . . against any. . . expenses (including, without limitation, attorneys' *fees* and expenses) . . . incurred by [appellant] as a direct or indirect result of . . . any breach or default by [appellee]" constituted an explicit first-party fee shifting clause.").[6] *Cf. Thomas v. Capital Med. Mgmt. Assocs., LLC*, 189 Md. App. 439, 467–72, 985 A.2d 51, 67–71 (2009) (declining to find that a contract with a clause on "Termination and Breach" that did not include a reference to the recovery of attorney's fees and a separate clause on indemnification that did include a reference to "attorney's fees," but only in relation to the "performance of [the] Agreement," and not to "default or termination under the Agreement," constituted a first-party fee-shifting clause in the event of a default).

Our plain language interpretation that Article 19 is sufficient to entitle White Flint to first-party attorney's fees is confirmed by the three clauses within the indemnification article. We disagree with petitioner's claim that the clause "indemnif[y], and agrees to

---

[6] *See also Broaddus v. Shields*, 665 F.3d 846, 856-57 (7th Cir. 2011), *overruled on other grounds* by *Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013) (enforcing a clause under Pennsylvania law where appellant agreed to "indemnify, defend and hold harmless [appellee] . . . against any and all losses arising out of or due to a breach . . . of [appellant] contained herein" as allowing first-party fee shifting); *Litton Microwave Cooking Prods. v. Leviton Mfg. Co.*, 15 F.3d 790, 795-96 (8th Cir. 1994) (finding Minnesota law recognizes first-party indemnity for fees "resulting from any breach" of warranties because "[o]n1y a strained reading could produce the third-party suit requirement . . . ."); *Fortune Southfield Co. v. Kroger Co.*, 931 F.2d 1282, 1284 (8th Cir. 1991) (finding under Missouri law, indemnity for "breach by Kroger of . . . [its] agreements" is "clear and unambiguous" for first-party fees); *James G. Davis Constr. Corp. v. HRGM Corp.*, 147 A.3d 332, 340–41 (D.C. 2016) (concluding that the plain language of an indemnification provision containing an express reference to "attorney's fees" and an "unqualified reference to 'any breach,'" allowed for first-party fee shifting).

defend and hold harmless White Flint" restricted Article 19 to third-party claims because, according to the petitioner, the verbs "defend and hold harmless" refer to third-party claims only, and by the principle of *noscitur sociis*,[7] that limitation applied to the promise to indemnify. Article 19 is divided into three clauses,[8] of which, only the latter two ("injuries to persons…" or "the activities of Bainbridge…") protected White Flint from third-party claims. Each item in a string of terms, separated by the disjunctive "or," is given independent meaning. *See Loughrin v. United States*, 134 S. Ct. 2384, 2390 (2014). Therefore, Article 19's reference "defend and hold harmless" language does not limit "indemnity" to third-party claims.

We disagree with petitioner's assertion that our holding obliterates the distinction between third-party and first-party actions established by *Jones v. Calvin Taylor Banking Co.*, 253 Md. 430, 44, 253 A.2d 742, 748 (1969), *Atlantic*, and *Nova Research.* In *Jones*, this Court found a fee-shifting provision in a contract to allow an indemnitee to recover reasonable attorney's fees incurred in defending against a third-party action. *Jones*, 253 Md. at 441-42, 253 A.2d at 748-49. Under the agreement in *Atlantic*, Ulico was to act as a surety for Atlantic, and issued a performance and payment surety bond on behalf of

---

[7] Under the principle of *noscitur a sociis*, one may discern meaning by examining the surrounding words.

[8] The three clauses in the Agreement are: "[i] Bainbridge's breach of any terms of this agreement" or ii) "injuries to persons or property resulting from the Work" or iii) "the activities of Bainbridge or its employees, agents, contractors, or affiliates conducted on or about the White Flint Property."

Atlantic to a third party. *Atlantic*, 380 Md. at 291-92, 844. A.2d at 463. A third-party made a claim on the bond, and Ulico brought a suit against Atlantic to recover the loss it suffered, paying out the bond and the attorney's fees it incurred in pursuing indemnification from Atlantic. *Id.* This Court affirmed the right of Ulico, the surety, to recover fees to enforce the indemnity agreement, which covered "from and against any and all Loss . . ," where the contract defined loss as "[a]ny and all damages, costs, charges, and expenses of any kind, sustained or incurred by [plaintiff] in connection with or as a result of . . . the enforcement of this Agreement." *Id.* at 302, 316-18, 844 A.2d at 469, 478-79.

Importantly, as noted in *Nova Research*, this Court did not uphold the award in *Atlantic* under the theory of implied fee shifting for attorney's fees from third-party defensive actions, but "upheld the award of attorney's fees after interpreting the indemnification contract." *Nova Research*, 405 Md. at 448-49, 952 A.2d at 283. Under the terms of the agreement, "Atlantic was obligated by contract to pay Ulico the sums it incurred to enforce the agreement, which included attorneys' fees, costs, and expenses." *Atlantic*, 380 Md. at 316, 844 A.2d at 478. And further, we determined that "[i]ndemnity agreements of this kind are interpreted generally to entitle the surety to recover fees, costs, and expenses incurred in enforcing them." *Id.* at 316, 844 A.2d at 478. Thus, our holding in *Atlantic* "[does] not obviate the need to apply contract interpretation to determine the scope of the indemnification provision and whether the clause covers first party enforcement rights." *Nova Research*, 405 Md. at 449, 952 A.2d at 283-84. Petitioner argues that the express words "in the enforcement of the agreement" in the indemnification agreement in *Atlantic* were essential to its holding and that Article 19 does not contain that

–17–

exact phrase.  The language in *Atlantic*, however, is analogous to the case at issue, as an action for "enforcement of the contract" is effectively the same as an "action for breach of contract."  *See Columbia Gas Transm'n Corp. v. Ashleigh Heights LLC*, 261 F.Supp. 2d 332, 333 (D. Md. 2002) (stating "[e]nforcement of a . . . agreement is essentially an action for breach of contract . . . .").

Moreover, we distinguished the type of contract at issue in *Nova Research* from indemnity contracts, like *Atlantic*, where first-party protection is critical.  In *Atlantic,* the "sole purpose of the arrangement was to secure credit or a guarantor.  The creditor or guarantor relied on indemnification as assurance in undertaking the deal." *Nova Research,* 405 Md. at 450, 952 A.2d at 284.  By comparison, the primary purpose of the contract in *Nova Research* "was to lease a truck and trailer"[9] and was "meant to protect a commercial

---

[9] As we described in *Nova Research:*

> "Nova purchased the rental of the trailer and insurance of up to $100,000 from Penske.  In addition, as part of the Agreement, Penske was to be indemnified and held harmless for any loss liability or expense above and beyond the $100,000 in liability protection that Penske was to provide.  The Agreement stated that Nova was responsible to indemnify Penske for loss over this amount that occurred 'as a result of bodily injury, death or property damage caused by or arising out of the ownership, maintenance, use or operation of Vehicle.'  In addition, in the section entitled 'Customer's Responsibilities; Refueling Service Charges; Breakdown Expenses,' a second indemnification provision called for Nova to "indemnify, and hold harmless Penske . . . from and against all loss, liability and expense caused or arising out of Customer's failure to comply with the terms of this Agreement.' The provision goes on in parts (B) through (H) to require Nova to pay for refueling, tolls and trip permits or licenses, unauthorized service, towing expenses, etcetera." (footnote continued . . .)

–18–

lessor against tort and casualty loss" from third parties injured by the lessee.  *Id.* at 450-51, 952 A.2d at 284-85.

The Agreement here is closer to the surety contract in *Atlantic* than the truck rental lease in *Nova Research*.  Bainbridge and White Flint designed the agreement to ensure that Bainbridge, and not White Flint, carried all of the risk from the construction work; otherwise, White Flint had no incentive to support Bainbridge's plans.  Thus, the parties designed Article 19 to ensure that White Flint would be made whole if Bainbridge breached the agreement, which supports first-party fee shifting.  *See Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 388, 488 A.2d 486, 488 (1985) (stating that "Maryland courts should examine the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution" to determine the intention of the parties to a contract).

Petitioner references *Oscar Gruss & Son, Inc.  v. Hollander*, 337 F.3d 186 (2d Cir. 2003), cited to in *Nova Research* as an instructive example of the distinction between first-party and third-party claims, for the proposition that the language in Article 19 did not expressly allow for first-party fee shifting.  In *Oscar Gruss,* the indemnity provision provided for "legal or other expenses . . . (*including, without limitation, in connection with the enforcement of the Agreement* and the indemnification obligations set forth herein)." 337 F.3d at 199.  Petitioner also references *Hooper Associate v. AGS Computers*, 548

---

*Nova Research, Inc. v. Penske Truck Leasing Co.*, 405 Md. 435, 450, 952 A.2d 275, 284 (2008).

N.E.2d 903 (N.Y. 1989), where the indemnification provision obligated AGS computer to "'indemnify and hold harmless [Hooper] . . . from any and all claims . . . including reasonable counsel fees' arising out of breach of warranty claims . . . ." 548 N.E.2d at 905.

We do not agree with petitioner that the indemnification clauses in *Oscar Gruss* and *Hooper*, where the courts in both cases prohibited first-party fee shifting, are analogous to the instant case. The indemnification clauses in both New York cases contained notice and assumption of defense clauses, where the indemnitee had to provide the indemnitor with notice of any indemnification claim, allow the indemnitor to assume its defense, and request the indemnitor's permission before settling any lawsuit. *Oscar Gruss*, 337 F.3d at 200; *Hooper*, 548 N.E.2d at 905. In *Oscar Gruss*, the United States Court of Appeals for the Second Circuit determined that this additional language applied only to third-party claims. 337 F.3d at 200-01. In *Hooper*, the Court of Appeals of New York found that the notice and assumption of defense clause had "no logical application to a suit between the parties. . ," and required a construction limiting the indemnity in order to "afford[ ] a fair meaning to all of the language" and "leave[ ] no provision without force and effect." 549 N.E.2d at 905 (internal citation omitted). Article 19 in the instant case does not contain a similar notice and assumption of defense clause that would limit it to third-party claims.

Finally, we do not agree with Bainbridge that Section 9 of the Agreement is a broad dispute resolution provision, covering all disputes. Section 9 provides merely for binding arbitration in certain circumstances, and contains a "prevailing party" fee provision. It does not address unresolved breaches by Bainbridge and damages claims for any such breach.

–20–

We hold that the Agreement contains express provisions that authorized first-party fee shifting, and subsequently White Flint is entitled to attorney's fees.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONERS TO PAY COSTS.**